# IN RE TUTU WATER WELLS CONTAMINATION LITIGATION

Master Docket File No. 1989-107

**RHODA J. HARTHMAN, et al., Plaintiffs**

**v.**

**TEXACO, INC., et al., Defendants**

**ESSO STANDARD OIL, S.A., LTD., et al., Third-Party Plaintiffs**

**v.**

**LAGA INDUSTRIES, LTD., et al., Third-Party Defendants**

Civil No. 89-220

**FOUR WINDS PARTNERSHIP, Plaintiff**

**v.**

**TEXACO CARIBBEAN, INC., et al., Defendants**

**ESSO STANDARD OIL, S.A., LTD., Counter-claimant and Third-Party Plaintiff**

**v.**

**LAGA INDUSTRIES, LTD., et al., Third-Party Defendants**

Civil No. 89-224

District Court of the Virgin Islands

Div. of St. Thomas and St. John

August 11, 1994

RICHARD R. KNOEPFEL, ESQ., (BRIGGS, KNOEPFEL & RONCA), Charlotte Amalie, St. Thomas, V.I., and THOMAS H. HART, III, ESQ., (ALKON, RHEA & HART), Christiansted, St. Croix, V.I., *for plaintiffs PID-Harthmans*

JOHN K. DEMA, ESQ., CAREY-ANNE MOODY, ESQ., (LAW OFFICES OF JOHN K. DEMA, P.C.), Christiansted, St. Croix, V.I., and DARREN DEFOE, ESQ., Waterford, Maine, *for plaintiff Four Winds Plaza Partnership*

ADDISON J. MEYERS, ESQ., MARY HOERBER, ESQ., (O'CONNOR & LEMOS), Coral Gables, Florida, and EDGAR CHRISTENSEN, ESQ., (LAW OFFICES OF R. ERIC MOORE), Christiansted, St. Croix, V.I., *for defendants Texaco, Inc., Texaco Caribbean, Inc.*

ROBERT T. LEHMAN, ESQ., DEBRA ROSEN, ESQ., WILLIAM J. O'KANE, ESQ., CHRISTOPHER GIBSON, ESQ., (ARCHER & GREINER), Haddonfield, New Jersey, and DOUGLAS L. CAPDEVILLE, ESQ., Christiansted, St. Croix, V.I., *for defendants Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc., and Esso Standard Oil, Co. (P.R.)*

RICHARD E. DALEY, ESQ., (PATTIE & DALEY), Christiansted, St. Croix, V.I. and E. BARCLAY CALE, JR. CO-COUNSEL, THOMAS A. DYE, ESQ., (MORGAN, LEWIS & BOCKIUS), Miami, Florida, *for defendant Exxon Corporation*

JOHN A. ZEBEDEE, ESQ., (LAW OFFICES OF JAMES L. HYMES), Charlotte Amalie, St. Thomas, V.I., *for defendant Vernon Morgan*

FRANCIS E. JACKSON, JR. ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Daniel Bayard*

CAROL ANN RICH, ESQ., (CAMPBELL, ARELLANO & RICH), Charlotte Amalie, St. Thomas, V.I., *for defendant Ramsay Motors, Inc.*

NANCY D'ANNA, ESQ., Cruz Bay, St. John, V.I., and PATRICIO MARTINEZ LORENZO, ESQ., Hato Rey Puerto Rico, *for defendant L'Henri, Inc.*

RICHARD G. LELAND, ESQ. (CO-COUNSEL), DAVID SLOSSBERG, ESQ., (LAW OFFICES OF ROSENMAN & COLIN), New York, New York, and KEVIN A. RAMES, ESQ., Christiansted, St. Croix, V.I., *for defendants Paul Lazare, Andreas Gal, The Duplan Corporation, Laga Industries, Ltd., Panex Industries, Inc., and Panex Co.*

JOHN R. COON, ESQ., (JOHN R. COON), Gallows Bay, St. Croix, V.I., *for defendant Western Auto*

RALDA V. SIMMONDS, ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Virgin Islands Housing Authority*

GEORGE MARSHALL MILLER, ESQ., Charlotte Amalie, St. Thomas, V.I., *for defendant Thomas A. Gassett, G.S. Industries, Inc.*

ROSALIE SIMMONDS BALLANTINE, ESQ., Attorney General for the Virgin Islands, By: HENRY THOMAS, Assistant Attorney General, Charlotte Amalie, St. Thomas, V.I., *for defendant V.I. Department of Education*

KATHERINE E. HARSCH, ESQ., (BORNN, BORNN, HANDY & RASHID), Charlotte Amalie, St. Thomas, V.I., *for defendant Siegfried Torinus and Waltrad Torinus*

BROTMAN, *Judge* (Sitting by Designation):

## MEMORANDUM OPINION

This matter is before the court on the application of the Movants, the Esso Defendants, the Virgin Islands Department of Education, L'Henri, Inc., Ramsay Motors, Inc., Texaco Caribbean, Inc., Vernon Morgan and Western Auto for an Order enjoining Panex Industries, Inc., Paul Lazare, The Panex Industries, Inc. Shareholders Liquidating Trust (the "Trust") and the Trustees of the Panex Industries Inc. Shareholders Liquidating Trust from disbursing assets from the trust, from proceeding with a Petition For Instruction Regarding Disbursement of Assets in the Chancery Court in Delaware, and for limited relief from the Fourth Case Management Order to conduct expedited discovery of the assets of Panex, the Trust and the former Shareholders of Panex. On August 1, 1994, the court noticed a telephonic hearing on this motion for August 3, 1994. Respondents (collectively referred to as the Laga Defendants) entered their objections on the record. Upon completion of oral argument, the Court reserved on the motion, and encouraged the parties to reach an amicable resolution. Respondents remained intractable in their position and no understanding was reached. For reasons stated below, the application for a stay and expedited discovery will be granted.

## FACTS AND PROCEDURE

Familiarity with the underlying facts of this litigation as set forth in an Opinion dated August 13, 1993, published at 846 F. Supp.

1243 (D.V.I. 1993) is assumed, and the court will only repeat those facts relevant to the current dispute. When granting an injunction the court is required by Rules 52 and 65(d), Fed. R. Civ. P., to set forth with particular specificity its findings of fact and the acts or act to be restrained. Accordingly, the court's opinion is organized as follows: Part One briefly recites the relationship of the Laga defendants, outlines the procedural background of the instant proceeding and places it in the context of the underlying litigation; Part Two addresses the court's jurisdiction to enjoin the respondents; and Part Three discusses the merits of the application.

## I. THE LAGA DEFENDANTS

A. *Respondents*

The parties referred to in the underlying litigation as the Laga Defendants are Duplan Corp., ("Duplan"), and Panex Industries, Inc. ("Panex Inc."), Laga Industries Ltd., ("Laga Ltd."), and Panex Co. and their officers, directors, principal shareholders or general partners Paul Lazare and Andreas Gal. Duplan was incorporated in Delaware with its principal place of business in New York. In 1970, Duplan became the 100% shareholder of Laga Ltd. which was incorporated in 1968 under the laws of the Virgin Islands, and was dissolved in 1981 for failure to pay corporate franchise taxes. Laga Ltd. owned and operated a textile manufacturing business in St. Thomas, United States Virgin Islands.

On August 31, 1976, Duplan filed for Chapter XI reorganization. By court order dated October 5, 1976, the bankruptcy proceeding was converted to a proceeding under Chapter X. On August 28, 1979, Duplan obtained authorization from the bankruptcy court to sell the Laga Ltd. site. By deed, from Duplan's trustee in bankruptcy, dated December 12, 1979, Panex Co. purchased the Laga Ltd. building site, now occupied by the Virgin Islands Department of Education (VIDE). Panex Co., is a New York partnership in which Paul Lazare and Andreas Gal were allegedly the only partners. In 1981 Duplan emerged from bankruptcy under the name of Panex Industries, Inc., another Delaware corporation. On September 21, 1984, the stockholders voted to liquidate Panex Inc., at which time its total capital was reported as approximately $61,000,000.00. Lazare and Gal were listed in the 1984 Proxy state-

313

ment as being the beneficial owners of 27.0% each of Panex common stock for a combined ownership of 54 percent of the shares.[1]

In April 1985, Panex filed a Certificate of Dissolution with the Delaware Secretary of State. In September 1985, on behalf of its stockholders, Panex formed the Panex Industries Stockholders Liquidating Trust Agreement (the "Trust") to administer, among other matters, the contingent liabilities of Panex and its shareholders. Panex initially funded the Trust with $6,000,000.00 (six million dollars). Andreas Gal, a named party to this action and the then Chairman of the Board of Panex, and Daniel Rosenbloom were named as trustees of the liquidating Trust. Sometime subsequent, Paul Lazare, another party to the main litigation, replaced Gal as trustee. No party named the Trust as a party to the underlying action.

### 1. The Trust

In July of 1984, Panex Industries, Inc., the successor corporation of Duplan, of which Laga Ltd. had been a wholly owned subsidiary, had total capital of approximately $61,000,000.00. Gal and Lazare, directors and/or officers of Panex Inc., purchased the Laga site in bankruptcy from Duplan through their partnership entity, Panex Co. In September 1984, the stockholders of Panex voted to liquidate the corporation. The Proxy for the Plan of Liquidation provided for the creation of a liquidating trust, as follows:

> Panex intends to deposit in a liquidating trust (the "Liquidating Trust") approximately $6 million on behalf of the stockholders as a reserve for possible contingent and other liabilities of Panex which may arise during or after the liquidation period. . . . If the amount held in the Liquidating trust is insufficient to discharge fully all liabilities which may arise, or if liabilities arise after the Liquidating Trust is terminated, each Panex stockholder may be liable for any unpaid portion of such liabilities to the extent of the liquidating distributions paid to him, including, if applicable, the value of any Wundies stock distributed to him pursuant to the Plan of Liquidation. See "The PLAN OF LIQUIDATION—the Liquidation Trust."

---

[1] Paul Lazare was a former officer and chairman of the Board of Laga Ltd. Lazare was a majority shareholder, and former director and chairman of the Executive Committee of Panex Industries, Inc., and was a shareholder and officer of Duplan prior to 1981. Andreas Gal is a former officer and director of Laga Ltd. and Panex Industries, Inc. Gal, it is admitted, was an officer of Duplan in 1975, but resigned that position during that year.

In April 1985, Panex filed a Certificate of Dissolution, and in September of 1985, the Panex Industries Stockholders Liquidating Trust was created. The initial trustees were Daniel Rosenbloom, Chairman of the Board of Panex from shortly after Duplan emerged from bankruptcy under the name Panex until the corporation filed its Certificate of Dissolution on April 15, 1985. The broad purpose of the Trust was to "satisfy all liabilities of the Company which were not paid or discharged." The trustees were expressly authorized to "continue to indemnify the officers, directors, employees and agents of Panex, as provided in its Certificate of Incorporation or By-Laws and the Laws of the State of Delaware, and to obtain such insurance covering Panex's obligations to indemnify as they, in their discretion deem necessary, desirable or appropriate." The trust agreement provides that the Trust "shall terminate three years from the date of this Trust Agreement or upon the payment to the Beneficiaries of all of the Trust property, whichever is earlier: . . . however, . . . but in no event beyond 12 years from the date thereof."

## B. *Procedural Background*

In July 1987, the odor of gasoline was detected in a well in the Tutu section of Estate Anna's Retreat within the Turpentine Run Aquifer on St. Thomas, U.S.V.I. (the "Tutu Aquifer"). In August 1987, samplings by the United States Environmental Protection Agency (the "EPA") of 24 wells within the Tutu Aquifer were found to be contaminated with gasoline constituents and chlorinated volatile organic compounds (VOCs). In March 1989, investigators from the EPA discovered numerous discarded drums allegedly containing solvents at the former Laga site which is located upgradient in the northern section of the Tutu Aquifer area. At the completion of its preliminary assessments of potentially responsible parties ["PRP's"] in the Tutu area, the Laga site was identified as a potential source of the contamination.

In March 1990, the EPA ordered Esso, Texaco and L'Henri to monitor the well water at the Tutu Aquifer. In February 1992, Texaco and Esso entered an Administrative Order of Consent ("AOC") with the EPA. Esso and Texaco agreed to perform Remedial Investigation and Feasibility Study ("RI/FS") of the extent and sources of chlorinated VOCs and hydrocarbon contamination of the Tutu Aquifer. To date, it is averred that Texaco and Esso have incurred almost $4,000,000.00 in costs performing the RI/FS.

On or about March 2, 1992, the Laga Defendants were named as parties to the action by Plaintiffs in their amended complaints and by the Esso Defendants in their Third Party Complaints. The Laga Defendants immediately moved to dismiss the CERCLA claims by the Esso Defendants and the Four Winds Plaintiff. In June 1992, Third Party Defendants Ramsay and L'Henri asserted cross claims against the Laga Defendants, among others. All claims against the Laga Defendants were for contribution (and indemnification by VIDE) under the common law, and response costs under CERCLA and RCRA. On March 12, 1993, the Court entered an Order allowing all complaints, claims and cross-claims filed as of March 1, 1993.

In their motion to dismiss these claims, the Laga Defendants raised as their principal argument the dissolution of Panex Inc. and the Laga, Ltd. corporate entities. Further, in their reply brief, the Laga Defendants argued that the assets of the successor corporations [Duplan Corp., Laga Industries, Ltd., and Panex Industries, Inc.] have long been distributed and thus these corporations have no legal existence to sue and be sued. In denying the Laga Defendants' motion to dismiss as to the CERCLA claims, this court held that "whether a dissolved corporation is a 'person' for imposition of liability under CERCLA depends on whether its assets can be identified and located to give it some discernible sign of legal life." In Re Tutu Water Wells Contamination Litigation, 846 F. Supp 1243, 1278 (D.V.I. 1993). The court then ruled that the parties were entitled to discover whether Duplan, Laga, and Panex, Inc. have identifiable assets which would give these corporations some discernible legal life for purposes of CERCLA liability.

Later in September 1993, shortly after this ruling, this court entered the Fourth Case Management Order ("CMO No. 4) which Order's form was being negotiated contemporaneously by the parties. As was agreed, all claims under CERCLA or the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., were severed by the Fourth Case Management Order. In addition, and most relevant to this proceeding, CMO No. 4 staved all discovery related to these claims.

On May 5, 1994, this court entered an Order approving and in furtherance of the Settlement Agreement dated as of April 27, 1994 (the "Settlement Agreement") reached among Four Winds Plaza Partnership, Esso Standard Oil, S.A., Ltd., Esso Virgin Islands, Inc.,

Esso Standard Oil Co. (Puerto Rico), Exxon Corporation, Laga Industries, Ltd., The Duplan Corporation, Panex Industries, Inc., Panex Co., Andreas Gal, Paul Lazare and Western Auto Supply Company (collectively referred to as the "Settling Parties").

On June 30th, 1994, this court entered a final Amended Order approving and in furtherance of the April 27, 1994 settlement which provided, in relevant part, at numbered paragraph 2:

> Any and all complaints, amended complaints, claims, cross-claims, counterclaims, and third-party claims in this action, Case No. 1989-224, which have been asserted and/or deemed to have been asserted by and between the Settling Parties are dismissed with prejudice; EXCEPT THAT nothing in this Order shall dismiss with prejudice or discharge any claims for contribution or the allocation of responsibility for the investigation or remediation of the Tutu Aquifer which the Settling Parties may have against any of the other Settling Parties arising from proceedings now instituted by the United States Environmental Protection Agency or any litigation arising from those proceeding under the Comprehensive Environmental Response, Compensation and Liability Act, as amended 42 U.S.C. § 9601 et seq., ("CERCLA"), or the Resource Conservation and Recovery Act, as amended, 42 U.S.C. § 6901 et seq., ("RCRA"), nor shall any such claim, to the extent previously asserted be subject to dismissal on statute of limitations grounds if such claims were timely asserted in this action;....

This provision remained unchanged from the first Order of May 5, 1994, entered in furtherance of the Settlement.

On May 23, 1994, the Laga Defendants filed a motion in this action to bring a third-party complaint against their insurers. In support of their motion, the Laga Defendants admitted that "the remaining assets of the liquidating trust of Duplan/Panex are simply not adequate to satisfy existing and anticipated attorneys' fees and disbursements, expert charges and the $890,000 settlement amount agreed to, upon the satisfaction of certain conditions, in the Four Winds Actions, let alone the defense costs and possible liability in the Harthman Action and the EPA proceeding. " Laga Defendants Motion for Leave to File Third-Party Complaint, Affidavit of Joel W. Sternman, ¶16, p. 7.

On May 25, 1994, the State of New York filed a cost recovery action under CERCLA and New York law against the Trust, Panex

Inc., Daniel Rosenbloom, Paul Lazare, and others for response costs associated with a contaminated site in New York. See State of New York, et al. v. Panex Industries, Inc., et al., C.A. No. 94-0400E (W.D.N.Y. filed May 25, 1994).

On June 28, 1994, the State of New York filed a motion seeking preliminary injunctive relief to prevent the Laga defendants from withdrawing $890,000.00 from the Trust to settle the Four Winds Claims as per the Settlement Agreement reached on April 27, 1994.

Also on June 28, 1994, Paul Lazare and Daniel Rosenbloom, as trustees for the Trust, filed a Petition For Instruction in Delaware state court captioned In Re Panex Industries, Inc. Stockholders Liquidating Trust, C.A. No. 13584 (Del. Ch. filed June 28, 1994), seeking approval to pay the Laga Defendants' portion of the Four Winds Settlement out of the Trust Assets. The Petition papers state that the Trust's remaining liquid assets are $1,275,000.00. Prior to June 29, 1994, when at a hearing in this action the parties requested information regarding the funding of the Four Winds Settlement, there was no disclosure of the amount in the trust or its precarious financial posture.

In the Petition, the Trustees state that:

> The trust and the Company [Panex Industries, Inc.] are presently defendants in various lawsuits seeking damages for alleged environmental contamination, two pending in the United States District Court in the District of the Virgin Islands, and one pending in the United States District [Court] for the Western District of New York. In addition, the Trust has indemnification obligations to the Company's former officers, directors and employees. The claims against the trust relating to these allegations seek amounts in excess of the Trust's assets.

The Petition also contains numerous allegations about the scope of the Four Winds settlement, and the status of the non-settling parties. Many of the contentions in the Petition have been disputed in this court by both the settling and non-settling parties, particularly, the Trustees' representation that the "trust undertook this commitment [to settle] (a) in order to terminate the Four Winds action, thereby relieving the Company (and the Trust as its successor entity) of potential liability under the severed CERCLA claims and (b) to satisfy its indemnity obligation to Gal and Lazare as former Officers and Directors." Petition at ¶17. The trustees alluded to the severed CERCLA claims of the settling party Four

Winds (see Petition, ¶ 15), but failed to advise the Delaware Court of the pending, non-settled CERCLA claims of Esso, L'Henri and Four Winds, and the potential CERCLA claims of the Virgin Islands' Government, Texaco, Ramsay and other parties. Thus, by omission, the Petition before the Delaware Court makes representations that are in the first instance clearly inconsistent with this Court's Orders, specifically, the Fourth CMO as entered by this Court, and the Orders of May 5, and June 30, 1994 approving and in furtherance of the Settlement of April 27, 1994; and in the second instance, likely to lead to inconsistent judgments with respect to this court's jurisdiction over the parties and the res which follows the trustees.

In its first Opinion in this matter, this court concluded that to the extent that assets of the dissolved corporations may, be identified and reached, Panex Inc. may have sufficient legal life for CERCLA liability. Discovery on whether Panex's assets may be identified and located was stayed. Moreover, it is worth noting that contingent assets, such as general comprehensive liability and excess insurance policies, have been held to be insufficient to breathe legal life into a dissolved entity for imposition of CERCLA liability. See AM Properties Corp. v. GTE Products Corp., 844 F. Supp. 1007 (D.N.J. 1994) (holding that a corporation which only held liability insurance policies as its assets was "dead and buried" for CERCLA purposes.) As Panex has represented, the Trust's liquid assets are almost depleted and insufficient to satisfy both the Four Winds Settlement and the fees incurred for attorneys and experts in this litigation.

The essence of Movants' argument in this application for a TRO is that if the petition before the Delaware Court is not stayed, so as to permit the parties in this case the opportunity to identify and locate assets of the dissolved corporation, a judgment by the Delaware Court permitting the trustees to distribute the Trust's liquid assets as requested would result in an exhaustion of those assets and the possible extinction of the corporations for purposes of CERCLA liability. Movants argue that this court was the first to exercise jurisdiction over Panex, Inc., and consequently it was the first forum to obtain jurisdiction over the res or "assets" of that entity held "in trust" for the payment of the corporation's debt." In addition, it is the only forum with jurisdiction over the CERCLA claims. Moreover, Movants contend that the Laga Defendants vol-

untarily brought the Trust into this litigation when the dispute concerning the Trust's contingent assets was brought before this court, and thus there is no prejudice from a stay or from this court's exercise of its concurrent jurisdiction with the Delaware Court over the res.

Respondents argue that neither the Trust nor the trustees (in their capacity as trustees) are parties to this action; that the Trust is a Delaware Trust and therefore interpretation of the Trust and the proper distribution of the Trust assets should be determined by the Delaware Court. The Laga Defendants also argue that the Movants cannot show irreparable harm, since the parties knew the Trust existed since 1993 and therefore had ample opportunity to bring the Trust or Trustees into this action. Further, the Respondents argue that the claim of dissipation is offensive, and that the Movants have failed to show a right of relief against the Trust. Finally, Respondents question this court's jurisdiction to enjoin the proceeding in the Delaware Court.

## II. DISCUSSION

A. *Power of the Court to Stay the Delaware Proceeding*

 As a preliminary matter, the court will address the issue of its authority to enjoin the parties from proceeding with the Delaware Petition, that is, the Court's authority to issue a stay of the Delaware proceedings. An injunction directed at the parties to a proceeding in a State court is in fact "an injunction 'to stay proceedings in State court.'" Atlantic Coast Line Railroad Company v. Brotherhood of Locomotive Engineers, et al., 398 U.S. 281, 287, 90 S. Ct. 1739, 1743, 26 L. Ed. 2d 234 (1970). Federal courts are empowered under the All-Writs Act to "issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651. The Supreme Court has interpreted the Act as conferring upon a federal court the authority "under appropriate circumstances" to issue such orders "to persons who, though not parties to the original action or engaged in wrongdoing are in a position to frustrate the implementation of a court order or the proper administration of justice." United States v. New York Telephone Co., 434 U.S. 159, 174, 98 S. Ct. 364, 373, 54 L. Ed. 2d 376 (1977) (citations omitted).

 The exercise of a federal court's authority to stay a State court proceeding is prohibited by the Anti-Injunction Act unless

the injunction is "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction or to protect or effectuate its judgments." 28 U.S.C. § 2283. The "necessary in aid of its jurisdiction" language of both Acts have been given a liberal interpretation by the courts. Thus, if the court finds that there is a substantial risk that a judgment by the Delaware court may result in frustrating this court's decision of August 1993 to allow discovery to "identify and locate" the assets of Panex Inc., or be inconsistent with the intent of the Fourth CMO, or that the State court judgment may thwart the proper administration of justice in this litigation, it may enjoin the Delaware proceeding. In other words, if this court finds that there is a substantial likelihood that a judgment from the Delaware proceeding would undermine or frustrate this court's jurisdiction over the principal cause of action and the parties thereto, it is empowered to enjoin that proceeding to preserve and maintain its jurisdiction.

## B. *Jurisdiction over the Trust Res and Trustees*

Because the All-Writs Act "is wholly derivative in nature" application of the Act "must be preceded by the satisfaction of jurisdictional perquisites." Carlough, v. Amchem Products, Inc., 10 F.3d 189, 198 (3d Cir. 1994). The Court will now address the Laga Defendants related jurisdictional argument that this Court is without in rem jurisdiction over the trust, or in personam jurisdiction over the trustees, specifically, co-trustee, Daniel Rosenbloom.

■■ Even if arguably the court currently does not have jurisdiction over the co-trustee Rosenbloom, by virtue of its jurisdiction over Panex, Inc. and Mr. Lazare, the other co- trustee of the Panex Liquidating Trust, it is obvious that there are no procedural or constitutional impediments to an assertion of jurisdiction by this court over the res or Lazare and Rosenbloom in their capacity as trustees. This is so because the liquidating trust of a dissolved corporation continues the legal life of the corporation for the satisfaction of pending debts or other foreseeable contingent liabilities, which under the common law would have been automatically extinguished upon dissolution. This concept finds support in the decision of the Delaware Superior Court in City Investing Co. v. Continental Cas., 624 A.2d 1191 (Del. Supr. 1993). There, the Delaware court noted that "[e]ven though the [corporate] entity was civilly dead [at common law], its assets, like those of an insolvent corporation, were

321

subject to administration in equity as a trust fund for the benefit of its creditors." Id. at 1194 (citing Bovey v. H.M. Byllesby & Co., Del. Supr., 27 Del. Ch. 381, 38 A.2d 808, 813 (1944)). The court in City Investing then went on to hold that a liquidating trust is a successor of the corporation whose assets it administers. City Investing, 624 A.2d at 1197. Thus, under Delaware law, corporate existence does not cease upon dissolution, but may be continued, generally through a liquidating trust, for the limited purpose of winding up corporate affairs. Indeed, a trust whose existence continues beyond the time contemplated by the terms of the trust for the purpose of winding up corporate affairs continues the corporation as a "viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs." City Investing, 624 A.2d at 1195.

Thus, the Panex Liquidating Trust Agreement created as it was to hold certain assets of the dissolved corporation for satisfaction of the contingent liabilities of the corporation, is "in effect, the alter ego of the predecessor corporation" Panex Inc. Id., at 1197. Here, Panex and one of the trustees are subject to the court's in personam jurisdiction. The Trust is there to satisfy the debts and liabilities of Panex. Rosenbloom, by virtue of his office as a former director of Panex [and as co-trustee of the Liquidating Trust] is one of the individuals through which the Trust acts. It cannot be argued that when and if liability against Panex is assessed that Rosenbloom would be free not to respond as trustee for Panex's liability, simply because he was not named in this action.

■ Nonetheless, Respondents make much of the fact that Lazare has not answered in this court in his capacity as a co-trustee, nor is the Trust or the other trustee, Rosenbloom, who is characterized as a disinterested party, named in this litigation. Under the common law and section 279 of the Delaware General Corporation Law, a trustee "may prosecute and defend an action in the name of the corporation." City Investing, 624 A.2d 1195 (remarking that "a corporation ... dissolved voluntarily by its shareholders or for nonpayment of taxes, ... remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs."). Thus, the Trust itself has no capacity to sue or be sued, hence, the maxim the trust follows the trustees.

The Trust provides for indemnification of its former officers and directors, who include Lazare, Gal and Rosenbloom. The Trust has

been or is being called upon to satisfy this indemnification liability with respect to the defense of this suit. The Trust agreement provides that "[a]ll action to be taken by the trustees shall be by the affirmative consent of a majority of the trustees then serving." Trust Agreement, Art. V, ¶ 5.1. Lazare and the Laga Defendants (including Panex) moved in this court, on behalf of the Liquidating Trust, to file third-party complaints against insurance companies. This motion was granted on June 6, 1994. Rosenbloom's consent, as trustee, to the aforementioned actions of the trust and co-trustee may be inferred. It is formalistic to now contend that this court lacks jurisdiction over the res and the trustees.

■■ Under Fed. R. Civ. P. 18, and the facts of this case, Rosenbloom, as trustee, and therefore the Trust, are subject to the court's jurisdiction. Rule 18 provides "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable or maritime, as the party has against an opposing party." Here, Lazare, as trustee, joined in this action the trust contingent asset claims against the insurance companies. It is of no moment that Lazare did not state affirmatively that he was acting as trustee, the actualities are that he was seeking relief for the Trust. In addition, there is no requirement under the common law as embodied in the Restatement that the trustee identify himself in the action or pleadings as trustee. See Restatement (Second) Trusts § 280, comment. h, p.41 (stating "[i]n an action brought by the trustee . . . it is unnecessary for the trustee in his pleadings or other proceedings to describe himself as trustee. He can proceed in the action as though he were the owner of the claim which he is enforcing. If he does describe himself as trustee the description is surplusage."). Based on the foregoing, the court's jurisdiction over the trustees and the trust is unassailable.

## III. MERITS OF THE MOTION FOR A TEMPORARY RESTRAINING ORDER

■ When considering a request for a preliminary injunction, the court must consider whether the moving party has a reasonable probability of eventual success on the merits, and whether that party will be irreparably injured if relief is not granted. Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d

323

187, 191–92 (3d Cir. 1990). The court should also take into account the public interest, as well as the possibility of harm to other interested parties. Id.

A. *Irreparable Injury*

In this application, the parties seek to protect a fund or asset which is and would be the subject of any final judgment in this action against the Laga Defendants. In essence, the parties are seeking a preliminary injunction to protect a future damages remedy. In addition, the Movants argue that a stay of the Delaware proceeding for a limited period would preserve the status quo and afford them the opportunity to conduct expedited discovery to identify and locate assets of the Duplan/Panex Corporations and the Trust that may be subject to recoupment.

The Trustees of the funds, through counsel, admit that "the remaining assets of the liquidating trust of Duplan/Panex are simply not adequate to satisfy existing and anticipated attorneys' fees and disbursements, expert charges and the $890,000 settlement amount agreed to, upon the satisfaction of certain conditions, in the Four Winds Actions, let alone the defense costs and possible liability in the Harthman Action and the EPA proceeding." Laga Defendants' Motion for Leave to File Third-Party Complaint, Affidavit of Joel W. Sternman, ¶16, p. 7. The Trust Agreement provides for automatic dissolution of the Trust upon distribution of all its assets. Of serious concern is the possible legal effect of dissolution of the Panex Trust upon this court's jurisdiction over the Laga Defendants for purposes of CERCLA liability. If distribution of the Trust assets occurs before discovery is had to identify and locate assets that may be recouped, the Laga Defendants may become "civilly" dead, that is, without the capacity to sue or be sued, even for purposes of CERCLA liability. Notwithstanding the above, at the hearing on this motion, counsel for respondents strenuously opposed the opportunity to grant discovery to movants and denied the possibility of "de facto" dissolution, if the injunction against the proceeding in Delaware does not issue.

██ ██ In Hoxworth v. Blinder Robinson & Co., 903 F.2d 186, 205 (3d Cir. 1990), this circuit recognized that the likelihood of an unsatisfied money judgment can constitute irreparable injury. However, because "[l]egally as well as economically, money is fungible" the preliminary injunction may issue only if the "funds [to

be] encumbered are worth no more than the amount reasonably in controversy, [that is] the injunction does involve a 'fund or property which could [be] the subject of the provisions of a final decree in the cause.'" Hoxworth, 903 F.2d at 195–96, (quoting Deckert v. Independence Shares Corp., 311 U.S. 282, 61 S.Ct. 229, 83 L. Ed. 189 (1940))

 The Movants have all demonstrated that they are likely to be entitled to the funds to be encumbered upon the issuance of a final judgment in this action, and that without the injunction, they probably will be unable to recover. Movants have shown that in 1984 when the stockholders of Panex voted to dissolve the corporation, Panex was valued at approximately $61,000,000.00; that in April 1985, the Trust was created with $6 million, and now the Trust is said to have a mere $1,275,000.00 in liquid assets. The Trustees have admitted that the Trust assets are insufficient to satisfy the claims made in this litigation. In addition, the State of New York has brought a cost recovery action against Panex and the Trust. The costs of remediating the former Laga site and the groundwater contamination in the Tutu Aquifer is expected to be staggering. Exxon and Texaco have already incurred in excess of $4,000,000.00 in RI/FS costs. The other Movants, L'Henri, Ramsay, Western Auto, Vernon Morgan and the Virgin Islands Government have averred that they have incurred substantial RI/FS contribution costs. The Movants' claims are worth more than the funds subject to the injunction, and thus "could be the subject of the provisions of a final decree on the CERCLA claims. Moreover, the Laga Defendants in the Delaware Petition, by omission, misstated this court's adjudication with respect to these CERCLA claims, have moved in that court for permission to distribute the assets of the funds on claims that exceed those assets. This court agrees with Movants that on these facts a judgment by the Delaware court permitting the distribution of the assets would result in an exhaustion of those assets. Aside from the obvious prejudice to the parties in this case, and the New York action, such a judgment may operate to destroy this court's jurisdiction over the Laga Defendants. Issuance of a temporary injunction is eminently appropriate, where, as here, the totality of the circumstances show a strong possibility of irreparable harm, the injunction is warranted in aid of the court's jurisdiction and to effectuate its Order with respect to discovery of the assets of Panex and the Trust.

B. *Success on the Merits*

The Court will now determine whether the Movants have demonstrated a likelihood to succeed on the merits of their claim. In order for the parties to recover from the Laga Defendants for cost recovery under Section 107(a) or for contribution under Section 113(f) of CERCLA, it is necessary to establish that (1) the "Laga Site" is a "facility;" (2) there was a "release" or a "threatened release" of hazardous substances at the Laga site; (3) the parties have incurred response costs associated with the site; and (4) the Laga Defendants fall into one of the four categories of "covered persons" identified in Section 107(a) of CERCLA. See United States v. Alcan Aluminum Corp., 964 F.2d 252, 258–59 (3d Cir. 1992). In its prior Opinion, this court found the first three requirements present and concluded that "Panex, Inc. and Panex Co. are 'covered persons' within the meaning of CERCLA" and are therefore subject to the imposition of CERCLA liability for the contamination at Tutu Aquifer. In Re Tutu, 846 F. Supp at 1282.

Moreover, to have a viable cost recovery claim there is no requirement that a party incur some threshold level of expenses. See Bowen Eng. v. Estate of Reeve, 799 F. Supp 467, 476 (D.N.J. 1992). Costs incurred to implement the terms of a consent decree or AOC are considered CERCLA response costs. See United States v. Northeastern Pharmaceutical and Chem. Co. (NEPACCO), 579 F. Supp. 823, 850 (W.D. M.O. 1984) aff'd in part, rev'd in part, 810 F.2d 726 (6th Cir. 1986), cert. denied, 484 U.S. 848 (1987); United States v. Hardage, 733 F. Supp 1424, 1434 (W.D. Okla. 1989), aff'd in part, rev'd in part, 982 F.2d 1436 (10th Cir. 1992), cert. denied sub nom, Advance Chemical Co. v. United States, — U.S. —, 114 S. Ct. 300 (1993).

Movants have shown that they have already incurred response costs, since the $4 million incurred to date for the RI/FS are response costs under CERCLA. See United States v. Rohm and Haas Co., 2 F.3d 1265, 1278, reh'g and reh'g en banc denied, (3d Cir. 1993) (the costs of conducting an RI/FS are recoverable). The Laga Defendants are covered persons under section 107, which imposes liability on "owners" or "operators" of a facility "from which there is a release or threatened release which causes the incurrence of response costs." 42 U.S.C. § 9607. Moreover, the statute does not impose a requirement on Movants to prove that substances from

the Laga site "caused the release or caused the incurrence of re-sponse costs; rather it requires the [Movants] to prove that the re-lease or threatened release caused the incurrence of response costs, and that the [Laga site] is a generator of hazardous substances." Alcan, 964 F.2d at 264. Here, the samples taken during the EPA's remedial investigation indicate that there has been a release of tri-chloroethylene ("TCE") and tetrachloroethylene ("PCE") at the former Laga facility. These chemicals constitute "hazardous sub-stances" for purposes of CERCLA. See 40 C.F.R. § 302.4 (1993). Considering the above, the court finds that Movants have clearly demonstrated that they are likely to succeed on their claims against the Laga Defendants for contribution on the response costs in-curred and being incurred, and remediation costs to be assessed by the EPA after the RI/FS is completed, for the "release" of haz-ardous substances into the Tutu Aquifer.

C. *Other Factors*

 Under the factual circumstances of this motion, the public interest factor and the possibility of harm to other interested par-ties must also be considered. Here, there is the valid concern that if the Delaware action is allowed to proceed unchecked, a judgment by the Delaware court permitting the trustees to distribute the as-sets would result in an exhaustion of those assets and the possible extinction of the civil life of the corporation, extended through the successor entity, the Liquidating Trust. See City Investing Co., 624 A.2d at 1197 (interpreting Delaware law and holding that "a liq-uidating trust is the successor of the corporation whose assets it administers."). Such a result would deprive the parties, as well as the United States Government and the Government of the Virgin Islands, of the opportunity to conduct discovery to "identify and locate" assets of a corporation which at the time of dissolution were valued at $61 million. Without this discovery, the possibility, however remote, of recouping assets to assist in the response costs of the cleanup of the Tutu Aquifer would be forever lost. For exam-ple, loss of the opportunity to recover costs from the Laga Defend-ants, who are "potentially responsible" for the contamination of the underground water in the aquifer, would increase the response costs burden of the current owner of the Laga site, the Virgin Is-lands Government, and consequently the people of the Virgin Is-lands. A more inequitable result is difficult to imagine. The interest

327

of the public clearly weighs on the side of granting the TRO and Expedited Discovery.

■ In addition, the interest of the State of New York is appropriately considered here. New York State has a site that has been contaminated, and response costs have been assessed against Panex Inc. New York is seeking recovery for response costs against the Panex Trust. At the hearing on this Motion, this court permitted New York to argue its position in favor of enjoining the Delaware proceeding, and will consider its request to participate in the limited expedited discovery with respect to the Trust assets. Both the New York action and this litigation contain claims brought pursuant to CERCLA, and one of the express goals of CERCLA is "to force polluters to pay for costs associated with remedying their pollution," Alcan, 964 F.2d at 258. As such, the court recognizes that the possibility of exhaustion of the Trust assets will cause irreparable harm to the State of New York in much the same manner as it will the parties in this action. Accordingly, the court will grant the request of counsel for New York to participate in expedited discovery pursuant to the order of this court.

I will leave for another day the further contention of New York, that Delaware law requires ratable distribution of the assets. Without deciding the issue, the court notes that this circuit has adopted the first-filed rule.[2] As discussed, supra, this court was the first court to acquire jurisdiction over Panex, Inc., and as a consequence its successor entity the Panex Trust. Moreover, the litigation in this court is far advanced; a settlement involving the assets held in trust for corporation liability was reached prior to the filing of the New York action, and it is necessary to this court's jurisdiction to retain control over the parties and the Trust, in furtherance of this settlement. Thus, under the first-filed rule and the entire-controversy doctrine it would appear that jurisdiction over the res of the Trust is properly in this court. However, the court will grant the parties an opportunity to brief the question of the appropriate distribution of the Trust's assets.

---

[2] See Crosley Corporation v. Hazeltine Corporation, 122 F.2d 9256 (3d Cir. 1941), cert. denied, 315 U.S. 813 (1942). Under the Third Circuit Court of Appeals adoption of the "first-filed rule, "'the court which first has possession of the subject must decide it.'" Id. at 929 (quoting Smith v. McIver, 9 Wheat 532, 535, 22 U.S. 532, 535, 6 L. Ed. 152 (1824))

Finally, the Court is not unmindful of Respondents' claim of prejudice with respect to the costs of defending this suit. For this reason, the Order will be carefully tailored so as to limit any harm to Respondents.

## CONCLUSION

Based on the foregoing, the court finds that a stay of the Delaware proceeding is necessary in aid of its jurisdiction, since to permit the Respondents to obtain permission to distribute the assets of the Trust would imperil this court's ability to administer justice in this case. Moreover, it is also necessary on the ground that Respondents' Petition to the Delaware court contains omissions that may lead to judgments inconsistent with, and thus likely to frustrate, prior Orders of this court.

Accordingly, an Order will issue enjoining the Laga Defendants, and the trustees Lazare and Rosenbloom, of the Panex Shareholders Liquidating Trust from proceeding with the action before the Delaware court for a period of 60 days and as may be extended by further Order of this court.

## ORDER

THIS MATTER having come before the Court on the application of the Movants, the Esso defendants, the Virgin Islands Department of Education, L'Henri, Inc., Ramsay Motors, Inc., Texaco Caribbean, Inc., Vernon Morgan and Western Auto for an Order enjoining Panex Industries, Inc. ("Panex"), Paul Lazare, The Panex Industries, Inc. Shareholders Liquidating Trust (the "Trust") and the Trustees of the Panex Industries, Inc. Shareholders Liquidating Trust from disbursing assets from the Trust, from proceeding with a Petition for Approval to Disburse Assets in the Chancery Court in Delaware and for limited relief from the Fourth Case Management Order to conduct expedited discovery of the assets of Panex, the Trust and the former Shareholders of Panex; the Court having reviewed the moving papers and heard the arguments of counsel, and in accordance with the accompanying Memorandum Opinion filed herewith;

IT IS on this 11th day of August, 1994 ORDERED that:

1. The Laga Defendants, including the trustees of the Panex Shareholder Liquidating Trust, Paul Lazare and Daniel Rosenbloom shall cause the proceedings in the Court of Chancery of the

State of Delaware, In and For New Castle County, captioned In re: Panex Industries, Inc. Stockholders' Liquidating Trust, C.A. 13584, to be STAYED for a period of 60 days from the date of this Order. Upon application to the Court, this time period may be extended for good cause.

2. The Laga Defendants, including the trustees of the Panex Shareholder Liquidating Trust, Paul Lazare and Daniel Rosenbloom shall cause to be sent by express mail, a copy of this Order and Memorandum Opinion to the Court of Chancery of the State of Delaware, In and For New Castle County. This mailing must be completed by August 15, 1994.

3. The Movants and all other interested parties, including the State of New York, shall have sixty (60) days from the date of this Order to conduct discovery concerning Panex's dissolution, the Trust, former shareholders of Panex, and beneficiaries under the Trust. The purpose of this discovery is to allow the Movants and all other interested parties, including the State of New York, to obtain the facts pertaining to and/or an accounting of: (1) Panex's dissolution; (2) the Trust from its inception until the present; and (3) distributions to former shareholders of Panex and beneficiaries of the Trust.

4. Panex, the Trust, the Laga Defendants,[3] the trustees of the Trust and their representatives shall produce, within thirty (30) days, all documents referring to, relating to or constituting the following:

(1) the operation and management of the Trust;
(2) Panex's and/or the Trust's ability to recall assets which may have been distributed to former shareholders or beneficiaries, respectively;
(3) the shareholders of Panex at the time of its dissolution;
(4) the beneficiaries under the Trust;
(5) all assets transferred by Panex to the Trust;
(6) all income derived from the investment or reinvestment of Trust assets;
(7) all dispositions of Trust property, including distributions to beneficiaries and disbursements to legal counsel, accountants, advisors, custodians and other agents of the Trust;

---

[3] The "Laga Defendants" consist of Paul Lazare, Andreas Gal, Laga Industries, Ltd., The Duplan Corporation, Panex Industries, Inc., and Panex Co.

(8) all sales or transfers of Trust property;

(9) the Trust tax returns and annual or periodic statements;

(10) all claims against the Trust, including claims for indemnification or former officers and directors of Panex;

(11) all payments by the Trust of liabilities of Panex and/or its subsidiaries or predecessor corporations;

(12) all reports by the Trustees to the beneficiaries of the Trust, including reports made pursuant to § 7.1 of the Trust Agreement;

(13) schedules "A" and "B" to the Trust Agreement;

(14) compensation of the trustees of the Trust;

(15) all amendments and/or changes to the Trust Agreement;

(16) the stock of Wundies, Inc. (Panex's wholly owned subsidiary);

(17) the initial funding and assets of the Trust;

(18) the sale of Wundies, Inc. or its assets;

(19) the amount received by each Panex shareholder from the Litigation Plan and/or the dissolution of Panex;

(20) the amount received by each beneficiary of the Trust from the Trust;

(21) all assets of the Trust including its current assets;

(22) all financial statements relating to the Trust and Panex's dissolution;

(23) distribution of the assets of Laga Industries, Ltd.; and

(24) assets of Panex, Laga Industries, Ltd., The Duplan Corporation and/or their subsidiaries, predecessors or successors distributed, conveyed or transferred to Wundies Industries, Inc. and/or Wundies Enterprises, Inc.

5. After the above requested documents are produced, all interested parties, including the State of New York , shall be entitled to depose the current and former trustees of the Trust, pursuant to Fed. R. Civ. P. 30(b)(6), about the matters described in Paragraph 3 of this Order. The depositions shall take place in New York, New York or some other mutually convenient place.

6. Discovery shall generally be conducted so as to effectuate the purpose of this Order.[4]

---

[4] From an efficiency standpoint counsel for Movants should combine their efforts and designate one or two counsel to conduct the depositions