Floyd **HINES** and **Mildred Hines, Appellants,**

v.

**A.O. SMITH HARVESTORE PRODUCTS, INC., et al.,**
**Appellees.**

No. 88–2484.

United States Court of Appeals,
Eighth Circuit.

Submitted June 16, 1989.

Decided July 26, 1989.

Brock R. Snyder, Topeka, Kan., for appellants.

John C. Dods, Kansas City, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Floyd and Mildred Hines appeal from an order of the district court granting A.O. Smith Corporation and A.O. Smith Harvestore Products, Inc.'s joint motion for summary judgment and Agristore Credit Corporation's motion for summary judgment. The district court concluded that the Hineses' breach of contract and fraud claims were barred by the applicable statute of limitations. For the reasons that follow we reverse and remand.

## I. BACKGROUND

Because this is an appeal from a grant of summary judgment, we will relate the facts in the light most favorable to the appellants Floyd and Mildred Hines. This is a diversity case brought by the Hineses against A.O. Smith Corporation, A.O. Smith Harvestore Products, Inc., and Agristor Credit Corporation (collectively referred to as Harvestore).[1] The Hineses are farmers who purchased Harvestore grain silos for their farming operation in southwest Missouri. The Hineses purchased two silos and related equipment, one in September 1976 and one in October 1976. These silos were purchased based on numerous oral and written representations and warranties made by the Harvestore salesmen and contained in promotional pamphlets and videos prepared by Harvestore.

The two Harvestore silos were installed on the Hineses' property in September and October of 1976. The Hineses agreed to purchase the silos only after repeated solicitations by the local Harvestore dealer and a Harvestore salesman. Various representations were made to Floyd Hines to induce him to purchase one or more Harvestore silos. He also attended large meetings which were held to promote the sale of the Harvestore silos. The representations concerning the performance of Harvestore silos were made orally by Harvestore dealers and salesmen, and through pamphlets, brochures, books, and fliers. In addition, the Hineses were persuaded by Harvestore dealers and salesmen to visit other Missouri farms to see the Harvestore silos in operation.

The Harvestores were represented to be the state of the art in feed storage systems. The Harvestores were described as "oxygen free" and/or "oxygen limiting" structures which sealed out oxygen and thus enhanced the nutritional value of the grain stored in the silo. This enhancement of the nutritional value of the silage was accomplished through the process of fermentation.

The Hineses were told that they would be able to extend their feed supply because the Harvestores would prevent spoilage. Because the Harvestores would enhance

---

1. Although not relevant to the issues presented in this appeal we take notice of the fact that similar suits have been brought nationwide. See, e.g., Agristor Leasing v. A.O. Smith Harvestore Products, Inc., 869 F.2d 264 (6th Cir.1989); AgriStor Leasing v. Farrow, 826 F.2d 732 (8th Cir.1987).

the silage stored within them, Mr. Hines was told that he would no longer have to supplement the silage with protein supplements, thereby reducing the costs of feeding cattle out of the silos. The Harvestore representatives also prepared profit projections for the Hineses' farm which projected a yearly cash income of $127,000 if the Hineses implemented the "Harvestore system" of farming. It was also represented to the Hineses that the unloaders on the silos would unload the silage at a rate that would reduce the amount of time required to feed the Hineses' cattle. Mr. Hines was skeptical of these claims until he read the promotional literature and a university study provided by the Harvestore representatives.

Within the first year that the Hineses' used the Harvestore silos Mr. Hines noticed that the feed stored within them was moldy and spoiled. He contacted the Harvestore representative and was told that this was normal and to be expected. Mr. Hines was told that the mold was penicillin and was good for his cattle. The mold and spoilage persisted and after inspecting the silo, the Harvestore dealer resealed the seams of the silo.

By the summer of 1978 the mold and spoilage problems cropped up again after the silos were refilled. The Harvestore dealer and manufacturer reinspected the silos and detected over 100 leaks in the seams. A resealing was proposed to remedy the problems and Mr. Hines agreed to the resealing. From 1978 thru 1981, Mr. Hines continued to use the silos and, although some of the grain stored within them was moldy and wet, the grain appeared to be better.

In the spring of 1982 Mr. Hines began to have trouble getting stored feed out of one of his silos. In addition, he noticed that the mold in the stored grain was different from the mold to which he had become accustomed. The mold he was told was good for his cattle was white in color, whereas the mold he now noticed was green and red in color. Mr. Hines again complained to Harvestore representatives.

Up to this point, the problems Mr. Hines was experiencing were manifesting themselves in the first silo he purchased which was installed in September 1976. The Harvestore representatives inspected both silos and recommended that both of them be resealed. Mr. Hines was told that Harvestore had a brand new resealing program which actually made the resealed silos superior to a new silo. Because of these representations, Mr. Hines agreed to the resealing of his silos. In May or June 1983, Mr. Hines noted that the new sealer had cracked and water was getting into his silos. In the early summer of 1984 the silos filled up with water after a wet spell. Mr. Hines once again contacted Harvestore representatives who recommended another attempt to reseal the silos. Mr. Hines was hesitant and after viewing several silos on other farms that had been resealed he rejected the latest offer to reseal his silos.

## II. DISCUSSION

The standard of review when considering the appropriateness of a district court's grant of summary judgment is, of course, well settled. "Summary judgment is appropriate only when there is *no* genuine issue of material fact, so that the dispute may be decided on purely legal grounds." *AgriStor Leasing v. Farrow*, 826 F.2d at 734 (emphasis in original, citations omitted). The district judge's function, and ours when reviewing a grant of summary judgment, "is not to weigh the evidence, but rather is to determine as a matter of law whether there are genuine factual conflicts." *Id.* "In making this determination, the court is required to view the evidence in the light most favorable to the non-moving party and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts." *Id.*

The district court determined that summary judgment disposition of the instant case was appropriate because it concluded that the applicable Missouri statute of limitations had run. The parties agree that the applicable statute of limitations for the Hineses' fraud claims is Mo.Rev.Stat. § 516.120(5) (1986), which provides:

Within five years:

\*    \*    \*    \*    \*    \*

(5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

Under this statute "[a] maximum of ten years is given for the discovery of the fraud and suit must be filed within five years after the discovery of the fraud or, in any event, within fifteen years after the commission of the fraud." *Berry v. Dagley,* 484 S.W.2d 182, 184 (Mo.1972). Thus any factual dispute as to when the Hineses discovered or should have discovered the alleged fraud would preclude summary judgment.

The Hineses filed suit on March 18, 1986. Since the earliest this cause of action could have accrued was September 1976, the date the first silo was installed, the Hineses were within the ten year requirement of § 516.120. However, if the fraud was or should have been discovered prior to March 18, 1981, more than five years from the date suit was filed, then the Hineses' claims would, nevertheless, be time barred. The Hineses argue that the earliest date on which their cause of action was discovered by them was in 1983, thereby within the requirements of § 516.120. Harvestore argues that the Hineses' fraud claim accrued in the spring of 1977. This presents a factual dispute which prevents summary judgment disposition of this case.

Harvestore maintains that the Hineses' cause of action accrued in the spring of 1977 when they knew or should have known that their silos were not preserving the silage as represented by Harvestore. It was in early 1977 when the Hineses first noticed that the feed stored in the silos was spoiled and moldy.

The Hineses, however, argue that their fraud claims are not premised on the fact that their silos leaked, which they concede

that they were aware of in early 1977. Rather, they base their fraud claims on the theory that even if the silos were perfectly sealed they would not perform as represented by Harvestore. Mr. Hines maintains that the problems he encountered with the silos were attributed by Harvestore to the poor seals and thus he did not know nor had he reasonable cause to believe that the silos, if properly sealed, nevertheless could not live up to Harvestore's claims.

The Hineses further contend that Harvestore and its agents lulled them into believing that the silos, while not presently performing as represented or warranted, could in fact be made to operate and perform as promised by the sealing procedure suggested and offered by Harvestore. Thus the Hineses did not discover the fraud until after 1982.

Mr. Hines states that it was not until March 26, 1985 that he first learned of the design defects inherent in his silos. Mr. Hines claims he first learned this by reviewing Harvestore's internal documents which establish that Harvestore knew the representations concerning their silos were false even before he purchased his silos.[2]

We believe that these factual disputes require a reversal of the district court. Summary judgment is not appropriate when, as in this case, a material factual dispute exists as to when a cause of action accrued. As we just noted there is a conflict in the evidence as to when the Hineses knew or should have known that their Harvestore silos were not performing as represented to them. If the jury accepted Harvestore's evidence that the Hineses should have known that their silos were defective in early 1977, when they first noticed spoilage and mold in their feed, this finding would support a judgment for Harvestore on the ground that the cause of action is time barred. On the other hand, if the jury accepts the Hineses' assertions that they did not know, and should not have known, that their silos were defective

---

**2.** The documents that Mr. Hines claims establish these facts were produced during the discovery phase of this litigation.

until 1982 or beyond their claims would not be barred by the statute of limitations. *See, e.g., AgriStore Leasing v. Saylor*, 803 F.2d 1401, 1405 (6th Cir.1986).

As this court noted in *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 264 (8th Cir.1984), normally in a statute of limitations context fraudulent concealment and a plaintiff's due diligence are questions of fact unsuited for summary judgment. Accordingly, we believe the issue of when the Hineses' cause of action accrued is a factual issue to be submitted to a jury.

Because we reverse the order of the district court and remand for trial we need not address the remaining issues raised on appeal. We note, however, that the Hineses' claim that the district court abused its discretion by limiting the amount of time available to them to respond to the motion for summary judgment borders on the frivolous. The district court allowed the Hineses the full amount of time provided for under the Local Rules in the Western District. Furthermore, the Hineses never requested an extension of time within which to file their response.

## III. CONCLUSION

We conclude that the question of whether the Hineses' fraud claims against Harvestore are barred by the statute of limitations presents a material factual dispute concerning the date the Hineses actually discovered or should have discovered the fraud.

Accordingly, we reverse the district court's order granting summary judgment and remand this case for trial.