CITY INVESTING COMPANY LIQUIDATING TRUST, Plaintiff Below, Appellant,

v.

CONTINENTAL CASUALTY CO., Defendant Below, Appellee.

Supreme Court of Delaware.

Submitted: Jan. 20, 1993.
Decided: May 26, 1993.

Richard L. Sutton, Jack B. Blumenfeld and Robert J. Valihura, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, and of counsel: Paul M. Dodyk (argued), and Matthew P. Morris, Cravath, Swaine & Moore, New York City, for appellant.

Barbara MacDonald and Neal C. Belgam, Morris, James, Hitchens & Williams, Wilmington, and of counsel: Robert W. Hayes (argued), and Karen Rosner, Cozen and O'Connor, Philadelphia, PA, for appellee.

Before HORSEY, WALSH, and HOLLAND, Justices.

WALSH, Justice:

In this appeal from the Court of Chancery, we address the question of whether a *dissolved* corporation, which established a liquidating trust to administer its assets during a post-dissolution period, is subject to a claim asserted beyond the three-year period established under Section 278 of the General Corporation Law. The Court of Chancery determined that the claim was not time-barred and was assertable under the terms of the agreement which established the trust. We agree with the ruling of the Court of Chancery and, accordingly, affirm.

I

The proceedings in the Court of Chancery began with the filing of a declaratory judgment action by City Investing Company Liquidating Trust ("City Trust"), in which City Trust sought determination that it was not subject to suit by Continental Casualty Company ("Continental") for indemnification under a surety bond issued by Continental for the benefit of City Investing Company ("City"), a Delaware corporation. In response, Continental asserted a counterclaim, seeking to hold City Trust liable for indemnification.

The indemnification dispute stems from the issuance in 1981 of a surety bond by Continental for the benefit of General Development Corporation ("GDC"), then a subsidiary of City, a publicly traded, diversified holding company with billions of dollars in assets. Continental, a member of the CNA Group of Insurance Companies routinely issued surety bonds to various City subsidiaries under a 1979 Indemnity Agreement (the "Indemnity Agreement") that required City, as the corporate parent, to indemnify Continental in the event Continental was required to respond to any claims asserted against a subsidiary.

The 1981 surety bond was issued in connection with a dispute between GDC and the Florida Department of Revenue over a proposed tax assessment against GDC. Under the assessment, the Florida Department of Revenue sought to collect $1,219,-379 in back taxes from GDC attributable to GDC's operations in Florida. GDC challenged the assessment by filing an action in state court in Florida. To avoid payment of the tax while the court challenge proceeded, GDC posted a bond in the amount of $1,958,530, with Continental as surety

on the bond (the "Florida surety bond"). In accordance with the terms of the Indemnity Agreement, City agreed to hold harmless and defend Continental with respect to any claims asserted against the Florida surety bond.

The Florida surety bond remained in effect for almost ten years while the GDC tax litigation proceeded. During this period certain events transpired which precipitated the present dispute. On December 12, 1984, the stockholders of City approved a plan of complete liquidation and dissolution which provided, *inter alia,* that:

> Within the Liquidation Period, [City] and its subsidiaries shall pay or discharge or set aside a reserve fund (the "Reserve Fund") for, or otherwise provide for, the payment or discharge of, all of their liabilities and obligations including contingent liabilities.

The Plan also provided that City could establish a liquidating trust if it were unable to completely distribute its assets within one year. The one year period was selected because City could achieve significant tax savings if it complied with former § 337 of the Internal Revenue Code. One of the requirements of I.R.C. § 337 was that the corporation wind up its affairs and distribute its assets to shareholders within one year.

City was unable to conclude its affairs within the one year period contemplated by the Plan. As a result, City's Board of Directors elected to create City Trust to which it transferred its remaining assets and outstanding liabilities. City then filed a Certificate of Dissolution with the Delaware Secretary of State, which became effective on September 25, 1985. At about the same time, City distributed certain of its assets to its shareholders and proceeded to divest itself of ownership of GDC.[1]

The purpose of City Trust, as stated in the Trust Agreement, is "to liquidate the Trust Estate in a manner calculated to conserve and protect the Trust Estate, and to collect and distribute to the Beneficiaries the income and proceeds therefrom in as prompt and orderly a fashion as possible after the payment of, or provision for, expenses and liabilities." Under the terms of the Trust Agreement, City Trust assumed all "claims, expenses, liabilities and obligations (including unascertained or contingent liabilities and expenses) of [City] listed on Schedule I." Although neither the indemnity Agreement nor the Bond were specifically listed, the final provision of Schedule I included "[a]ny cost, expense or liability associated with any claim asserted against City with respect to any act or omission attributable to its operations or affairs which has not been discharged in full or adequately provided for."

It was intended that the term of City Trust would conclude on September 25, 1988. However, it proved impossible to wind up City's affairs that quickly. Indeed, City Trust has yet to liquidate all of its assets. Thus, the Trustees have extended City Trust's existence through the present.

It is unclear, and a matter of dispute between the parties, when Continental became aware of City's dissolution. Although Continental was never formally notified of the dissolution by either City or City Trust, certain Continental employees became aware in 1984 that plans to dissolve City were being formulated. Since the Florida surety bond was still in effect, even though no claims had been asserted against it, City's obligation to Continental under the Indemnity Agreement was viewed as a contingent liability. For its part, however, Continental took no steps to press its contingent claim as long as the Florida proceedings remained static.

In 1990, GDC, no longer a City subsidiary, filed a Petition for Reorganization in the United States Bankruptcy Court for the Southern District of Florida. During the reorganization proceedings, GDC and the Florida Department of Revenue reached a

---

1. In 1985, City sold approximately 62 percent of the common stock of GDC to public investors. The remaining 38 percent was transferred to City Trust. In July, 1986, City Trust distributed the remaining shares to its beneficiaries. Since 1986, City Trust has not had an ownership interest in GDC.

settlement, without notice to Continental, of the outstanding tax assessment. Under the terms of this settlement, GDC agreed to the entry of a consent judgment for the entire amount of the surety bond in exchange for the taxing authority's agreement to enforce the judgment only against the surety, *i.e.*, Continental. The consent judgment was duly entered and, on October 8, 1990, the Florida Department of Revenue made demand upon Continental for payment on the bond. Continental contested satisfaction of the judgment against it and, on May 29, 1991, made demand upon City Trust to satisfy City's obligation under the Indemnity Agreement.

City Trust responded to Continental's demand under the Indemnity Agreement by filing a complaint in the Court of Chancery, seeking a declaratory judgment that neither City nor City Trust were subject to suit by Continental on the Indemnity Agreement after the expiration of the three-year period imposed by 8 *Del.C.* § 278 for winding up the affairs of a corporation. City Trust also sought injunctive relief to prevent enforcement of the Indemnity Agreement. Continental counterclaimed, seeking to hold both City and City Trust liable under the Indemnity Agreement.

In a preliminary ruling, the Court of Chancery granted City Trust's motion for summary judgment holding that City no longer existed as a legal entity and was not subject to suit by reason of the three-year period under Section 278. The Court ruled, however, that the ultimate liability of City Trust must be resolved through interpretation of the Trust Agreement. Thereafter, on cross-motions for summary judgment, the Court ruled that under the relevant terms of the Trust Agreement, City Trust had assumed City's obligation under the Indemnification Agreement and Continen-

tal's claim was not limited by the three-year period under Section 278.[2]

## II

City Trust contends that the Court of Chancery erred in permitting the assertion of Continental's claim under the Indemnity Agreement despite the three-year bar of Section 278. Alternatively, it argues that even if Continental's claim is not time-barred, there is a genuine factual dispute as to the meaning of the liability assumption language of the Trust Agreement and it was error for the court to grant summary judgment in favor of Continental. Both assertions of error implicate rulings of law and our standard of review is *de novo*. *City of Wilmington v. Parcel of Land*, Del.Supr., 607 A.2d 1163, 1165–66 (1992); *Gilbert v. El Paso Co.*, Del.Supr., 575 A.2d 1131, 1141 (1990).

At common law, the dissolution of a corporation terminated its existence as a legal entity. *In re Citadel Industries, Inc.*, Del. Ch., 423 A.2d 500, 503 (1980); *see also* 16A Fletcher Cyclopedia Corporations § 8113 (1988). Even though the entity was civilly dead, its assets, like those of an insolvent corporation, were subject to administration in equity as a trust fund for the benefit of its creditors. *Bovey v. H. M. Byllesby & Co.*, Del.Supr., 27 Del.Ch. 381, 38 A.2d 808, 813 (1944). In order to formalize the continued existence of corporate assets and to provide a mechanism for the assertion of claims as part of the "winding up" process, the Delaware General Corporation Law continues the corporation's existence by operation of law. Section 278 thus provides:

> All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for

**2.** In the Court of Chancery, City Trust argued that Continental's counterclaim was barred by laches and unclean hands. The Vice Chancellor rejected these contentions. As to the laches claim, the Court ruled that the assertion of the indemnity claim was well within the analogous three year statute of limitations (10 *Del.C.*

§ 8106), assuming its accrual when GDC entered into the Florida consent decree. The unclean hands defense was ruled irrelevant if City's legal obligation arose under the Indemnity Agreement. Neither ruling has been appealed.

the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3–year period and until any judgments, orders or decrees therein shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery.

8 *Del.C.* § 278.

By its terms, Section 278 provides an automatic extension of corporate existence for three years. In addition, the Court of Chancery may extend the three-year period for any purpose relating to litigation or where additional time is needed for the winding up process. A further period of implicit corporate existence, of indefinite duration, is imparted by the statutory directive that no action for or against the corporation shall abate by reason of the dissolution of the corporation, the corporation's existence being extended until the execution of all judgments or decrees affecting the corporation.

Section 278 is not the exclusive method for the enforcement of claims for or against a dissolved corporation. Section 279 of the General Corporation Law permits the appointment of a trustee or receiver at the behest of any creditor or stockholder "to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with the power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be necessary or proper.... and to do all other acts which might be done by the corporation, if in being, that may be necessary for the final settlement of the unfinished business of the corporation." 8 *Del.C.* § 279. Although the two sections are interrelated, a petition under Section 279 is directed to the restoration of corporate existence once terminated under Section 278 or otherwise by the action of its officers and directors. *In re Citadel Industries, Inc.,* 423 A.2d at 505. In tandem, these two statutes insure that whether a corporation is dissolved voluntarily by its shareholders or for nonpayment of taxes, it remains a viable entity authorized to possess property as well as sue and be sued incident to the winding up of its affairs. *Addy v. Short,* Del.Supr., 47 Del. 157, 89 A.2d 136, 140 (1952) (construing predecessor statutes).[3]

In the Court of Chancery, City Trust contended that the three-year period under Section 278 is a form of statute of limitations, barring the assertion of legal, as distinct from equitable, claims against the corporation's undistributed assets beyond that time period. The Vice Chancellor ruled, however, that City Trust enjoyed a separate existence as a trust created for the purpose of permitting the trustees to extend the liquidating process, apart from the strictures of Section 278, including its time bar for suit.

On appeal, City Trust reasserts its contention that the Section 278 three-year bar protects it from claims to the same extent as City. It argues that Section 278 represents a policy determination by the General Assembly that three years is sufficient time for the creditors of a dissolved corporation to bring suit. City Trust places primary reliance upon a series of federal deci-

---

**3.** An additional procedure for dissolution set forth in 8 *Del.C.* § 280–282 may bar a claim asserted by a creditor beyond the three year period if the claimant, including a contingent-creditor, is afforded direct notice of the plan of dissolution. 8 *Del.C.* § 280(a)(1). This statuto-ry scheme, enacted in 1987, postdates City's formal dissolution under Section 278 and is thus not applicable here. However, Section 280(e) defines the term "successor entity" to include "any trust, receivership or other legal entity governed by the laws of this State."

sions construing Section 278 as authority for its position that the three-year period is an absolute bar, notwithstanding the post-dissolution presence of corporate assets or activities.

In our view these decisions are distinguishable and do not control the present situation. In *Smith–Johnson Steamship Corp. v. United States*, D.Del., 231 F.Supp. 184 (1964), the court refused to permit the assertion of a counterclaim of libel in an admiralty action against a dissolved Delaware corporation after the expiration of the three-year period in litigation commenced by the corporation prior to its dissolution. The court analogized the Section 278 time bar to a statute of limitations expressing "a legislative policy *normally* prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution" *Id.* at 186 (emphasis added). *In Johnson v. Helicopter & Airplane Services Corp.*, D.Md., 404 F.Supp. 726 (1975), the court also rejected a products liability claim filed against a dissolved Delaware corporation more than three years after its dissolution, despite the post-dissolution winding up activities of the corporate officers and directors. Similarly, in *BLH, Inc. v. United States*, U.S.Cl.Ct., 2 Cl.Ct. 463 (1983), the court refused to permit a dissolved Delaware corporation to be sued under a government contract beyond the three-year winding up period where the government had direct knowledge of the dissolution but took no steps to assert its claim within the three-year period and did not seek the appointment of a receiver under Section 279.

■ These federal decisions interpreting Delaware statutory law are, of course, not binding on this Court or the Court of Chancery. Moreover, these decisions lack a significant factual element which distinguish them from this case. In none of the federal cases did a corporation as part of its plan of dissolution, and within the statutory winding up period, opt to establish a separate legal entity to further its liquidation efforts. We believe this distinction important in view of the two principles which underlie the dissolution process under Sec-

tion 278 and 279: the need for a definite period in which a corporation may pursue the ordinary winding up of its affairs; and assurance that the dissolution process not become a method for the avoidance by corporate officers and directors of their duty to satisfy the debts and liabilities of the corporation. The establishment of a liquidation trust is entirely consistent with the orderly winding up process contemplated by Section 278 provided it does not serve as a basis for the avoidance of corporate liabilities.

■ City Trust's efforts to restrict its liability to claims filed within three years of City's dissolution does not accommodate the statutory method for the assertion of creditors' claims nor the purpose behind its adoption. By distributing its assets to a trust, City was able to achieve substantial tax savings but at the same time it extended its winding up period by transferring its operations to a separate legal entity—City Trust. Had City elected to seek court approval to continue its existence "for such longer period" beyond the three-year term as necessary to wind up its affairs instead of creating City Trust, there is little question that its assets would be reachable by its creditor and subject to claims at the time Continental filed its claim in 1990.

We perceive of no prejudice to City's shareholders through recognition of Continental's claims. A partial, but substantial, distribution to City's shareholders has already been accomplished. In the normal course of dissolution, Delaware law permits such distribution provided a reserve fund for the benefit of creditors is maintained. The liquidating trust established here through a separate legal entity does no more than accomplish that same required end.

The acknowledged purpose for establishment of a liquidating trust is tax avoidance. Under the Internal Revenue Code, trusts receive favorable tax treatment. 26 U.S.C. Subchapter J. While business trusts are treated as corporations, "[i]f it is determined that a trust is a liquidating trust, [it] is treated as a simple trust." *In re Tru Block Concrete Products, Inc.*, Bankr.

S.D.Cal., 27 B.R. 486, 489 (1983). For tax purposes, "[a]n organization will be considered a liquidating trust if it is organized for the primary purpose of liquidating and distributing the assets transferred to it, and if its activities are all reasonably necessary to, and consistent with, the accomplishment of that purpose." Treas.Reg. § 301.7701–4(d) (1986). Regardless of tax consequences, however, a liquidating trust is the successor of the corporation whose assets it administers. A liquidating trust is formed to wind up the predecessor corporation's affairs and "operates in the same manner as a dissolving corporation." *In re Tru Block Concrete Products Inc.*, 27 B.R. at 490. "It is, in effect, the alter ego of the predecessor corporation." *Id.*

Here, the liquidating trust was established incident to a Plan of Liquidation which called for the creation of a reserve fund, or an alternative mechanism, for "the payment or discharge of, all of the [subsidiaries'] liabilities and obligations including contingent liabilities. City Trust was created under a Trust agreement which charged it, *inter alia*, "to collect and distribute to the Beneficiaries the income and proceeds therefrom is as prompt and orderly a fashion as possible after the payment of, or provision for, expenses and liabilities." Although it was originally contemplated that the term of the trust, and City Trust's existence, would not extend beyond a three-year dissolution period, the Trustees have elected to continue its existence for asset administrative purposes. The trust was in existence at the time City's contingent liability under the GDC surety bond matured and at the time Continental asserted its counterclaim in the Court of Chancery. Presumably, it still continues.

Since the liquidating trust is a separate entity, but not a corporation, it is not subject to the three-year period imposed by Section 278. However, because it holds assets for the benefit of both the shareholders and creditors under a plan of liquidation, it is subject to creditors' claims. Accordingly, we agree with the Vice Chancellor that Continental's claim, asserted in the form of a counterclaim, was timely

under the analogous statute of limitation for claims arising *ex contractu.*

## III

We next address City Trust's alternative argument that even if Section 278's time requirement, as a matter of law, does not bar Continental's claim, there is a material factual dispute concerning whether the drafters of the Trust Agreement intended to recognize claims asserted beyond the three-year period. The Court of Chancery concluded that the undertaking by City's Board of Directors to provide for all remaining corporate liabilities through the liquidating trust was unambiguously expressed and not subject to modification through parol evidence.

The Trust Agreement executed on September 25, 1985 by authority of City's Board of Directors transferred certain assets to designated trustees "for the benefit of the stockholders" of City "subject to the claims, expenses, charges, liabilities and obligations listed thereon." Article 14.2 of the Agreement expressly declares the intention of the parties not to create "a corporation, association, partnership or joint venture of any kind for purposes of Federal income taxation or for any other purpose [but] to create a trust ... governed and construed in all respects as a trust." In Schedule I, the agreement lists the assets to be conveyed in trust as well as the liabilities which encumber those assets. Following a listing of specific items, the statement of liabilities concludes with the following inclusive language: "Any cost, expense, or liability associated with any claim asserted against City with respect to any act or omission attributable to its operations or affairs which has not been discharged in full or adequately provided for."

In resisting Continental's motions for summary judgment, City Trust presented affidavits by three current Trustees of City Trust, each of whom, as officers of City, claimed to be privy to the intentions of the settlors of the trust regarding the trust's liability for claims asserted against the trust beyond the three-year period fixed by Section 278. Not surprisingly, these indi-

viduals stated that it was not the intention of the parties to the Trust Agreement that claims otherwise barred under Section 278 would be recognized.

The Vice Chancellor rejected City Trust's effort to explain the meaning of the "any liabilities" provision through the use of extrinsic evidence in view of the clear and unambiguous terms of the trust instrument, although the court suggested that even if extrinsic evidence were considered as to the meaning of the liability language such evidence would not serve to establish a completely contradictory meaning. We read the Vice Chancellor's ruling as rejecting the application of the parol evidence rule. We agree that the effort to present parol evidence to vary the clear language of the Trust Agreement is unwarranted in this case.

■ If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent. *Citadel Holding Corp. v. Roven*, Del.Supr., 603 A.2d 818, 822 (1992). However, if the words of the agreement "can only be known through an appreciation of the context and circumstances in which they were used" a court is not free to disregard extrinsic evidence of what the parties intended. *Klair v. Reese*, Del. Supr., 531 A.2d 219, 223 (1987). In that situation the language used by the parties is subject to different meanings and is, thus, ambiguous, or more precisely, not reflective of the parties shared intent. But the language of an agreement, like that of a statute, is not rendered ambiguous simply because the parties in litigation differ concerning its meaning. *Cf. The Stop & Shop Companies, Inc. v. Gonzales*, Del. Supr., 619 A.2d 896 (1993).

■ City Trust's attempt to rely upon extrinsic evidence to explain the meaning of the "any liabilities" language must be rejected. Preliminarily, it should be noted that the Trust Agreement is not a writing intended to reflect a previous meeting of the minds by parties to the agreement who now dispute its meaning. *Cf. Klair v. Reese*, 531 A.2d at 223. The Trust Agree-

ment was, in effect, an *ex parte* instrument, drafted apparently without negotiation, to advance the common interests of the principal beneficiaries (the shareholders) and the settlors (the management of City Trust). To be sure, cast in the form of a liquidation trust, City Trust's tax avoidance effort could be achieved only if the assets placed in trusts were subject to provision for claims and liabilities. But City's creditors apparently played no part in the drafting of the trust and their interests were not specifically considered. It was sufficient to insure that the interests of all creditors, present and contingent, were protected by the inclusion of the broad language appearing at the end of Schedule I of the agreement. For City Trust now to seek to read into that language an unarticulated reservation concerning claims which would be barred two years hence under Section 278, a provision not mentioned in the Trust Agreement, is imaginative but does violence to the clear meaning of the language selected. We agree with the Vice Chancellor that to imply such a restriction turns the agreement on its head.

The Court of Chancery correctly declined admission of parol evidence to vary the clear meaning of the "any liabilities" language of Schedule I of the Trust Agreement. Since that language conveys an assumption of liability by City Trust for claims to be filed during the pendency of the liquidating trust, Continental's claim, timely filed after its accrual, is properly assertable against the assets of the Trust. We perceive of no material issue of fact which precluded the grant of summary judgment in Continental's favor or its counterclaim, as the Court of Chancery correctly determined.

The judgment of the Court of Chancery is AFFIRMED.