[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The defendant moves for summary judgment with respect to all three counts of the plaintiffs complaint.
On August 20, 1999, the plaintiff, J.F.C. Endeavors, Inc. ("JFC"), filed a second amended complaint in three counts against the defendant, Pioneer Steel Ball Company, Inc. (PSB). In its complaint, the plaintiff alleged fraudulent concealment, negligence and violation of Connecticut General Statutes §§ CT Page 1609222a-134, et seq., ("the Connecticut Transfer Act"), and claimed money damages, costs and interest. The following facts have also been alleged by the plaintiff. Thomas C. Zipp, at all relevant times, was the vice president and secretary of R-Z Realty of Bristol, Inc., ("RZ") a Connecticut corporation. (Complaint, Count One, ¶¶ 1-2.) In 1987, Zipp, on behalf of RZ, negotiated with PSB for RZ's purchase of a piece of PSB's real property, which property is located in Farmington, Connecticut. (Count One, ¶¶ 1, 3.) Zipp negotiated with Joseph Martinelli, "whom he believed was authorized to negotiate the sale of the subject property on behalf of PSB." (Count One, ¶ 4.) During the negotiations "Zipp informed Martinelli of his intentions to develop the Property as a residential subdivision and stressed the importance of the Property as a mechanism for providing a right of way [to the subdivision residences]." (Count One, ¶ 5.) RZ agreed to purchase the property from PSB for $27,500, and on October 5, 1987, title was conveyed by warranty deed to RZ from PSB. (Count One, ¶¶ 6, 7.) "RZ transferred the Property to Zipp in his individual capacity on August 25, 1988 by warranty deed." (Count One, ¶ 8) On July 3, 1996, Zipp conveyed, by quitclaim deed, a portion of the property to Krell Farms, LLC ("Krell"), of which corporation Zipp is a member, and "the bulk of the remaining portion of the Property to the Farmington Land Trust." (Count One, ¶¶ 9, 10, 11.) The complaint further alleges that, "[f]rom at least 1948 until 1987, PSB owned and operated a manufacturing facility located at 37 Mill Street, in Farmington, Connecticut ("the Pioneer Facility"), across the Farmington River from the Property," at which facility "PSB generated metal sludge and stored such sludge in pits . . . between 1955 and the summer of 1987." (Count One, ¶¶ 12, 13.) "Sludge was removed from the Pioneer Facility and was deposited on the Property between 1965 and 1970, resulting in a large, visible sludge deposit on the Property." (Count One, ¶ 14.) The Connecticut Department of Environmental Protection ("DEP") issued an order in 1986 requiring PSB to ""effect the removal and proper disposal of all hazardous and other industrial waste' stored at the Pioneer Facility." (Count One, ¶ 15.) "By late 1986, the sludge deposit at the Property had been covered by approximately six to eighteen inches of clean sand, effectively concealing its presence from the DEP and others." (Count One, ¶ 16.)
It is alleged that PSB intentionally failed to disclose the presence of the sludge deposit to Zipp during negotiations of the "terms by which RZ would take title to the property when it CT Page 16093 acquired it from PSB in October of 1987," in an effort to ensure the sale to Zipp and RZ. (Count One, ¶¶ 17, 18.) "Zipp and RZ relied upon the representations made by PSB, including PSB's non-disclosure of the presence of the sludge deposit on the Property." (Count One, ¶ 19.) "Had Zipp or RZ known of the Property's true condition, they would have insisted that PSB remove the sludge deposit and remediate any related contamination, or they would not have purchased the property." (Count One, ¶ 20.)
The sludge deposit was discovered by Krell in the Fall of 1996, during the course of excavating the access way for the residential subdivision. (Count One, ¶ 21.) "In connection with the discovery of the sludge deposit, Krell discovered that the sludge had been covered by approximately six to eighteen inches of fill, effectively concealing its presence from Zipp, in both his individual and representative capacities for RZ and Krell." (Count One, ¶ 22.) "The sludge contained levels of total petroleum hydrocarbons ("TPH") and heavy metals that exceed the state remedial standard regulations for such substances." (Count One, ¶ 23.) "Following the testing of the content of the sludge deposit, Krell received a copy of a memorandum from Stephen J. Gaura, Environmental Analyst with the State of Connecticut Department of Environmental Protection which stated that it had been determined that the blackened, oily soil would have to be sampled and then handled and remediated accordingly." (Count One, ¶ 24.) "For the development to proceed to completion and, as a prerequisite for the Town of Farmington's assumption of control over the access way and the accessory storm and sanitary drainage facilities, it was necessary for Krell to excavate and dispose properly of the sludge on the Property," which it did, "at a cost of at least $171,490." (Count One, ¶¶ 25, 26.) Due to the remediation process, development of the access way and the subdivision was delayed, causing Krell to incur financial injuries in the form of lost profits, municipal real estate taxes, and liability insurance costs. (Count One, ¶ 27.)
"PSB was dissolved by Certificate of Dissolution on March 11, 1988, but continues to receive revenue pursuant to a purchase money mortgage from the purchaser of the Pioneer facility, dated February 19, 1988 and recorded in Volume 373 at Page 10 of the Farmington Land Records." (Count One, ¶ 28.)
"Upon information and belief, PSB created a liquidating trust CT Page 16094 known as `PSB Associates Liquidating TRA' ("Liquidating TRA"), which continues to operate PSB for the purpose of collecting revenues." (Count One, ¶ 29.) "Having succeeded to the assets and liabilities of PSB, the defendant, Liquidating TRA, is liable for damages sustained as a consequence of the foregoing acts and omissions of PSB." (Count One, ¶ 30.) "By Assignment dated January 12, 1999, Krell assigned all of its right, title and interest in the foregoing cause of action to the plaintiff, J.F.C. Endeavors, Inc., of 117 Birch Street, Southington, Connecticut, which remains the holder thereof." (Count One, ¶ 31.)
Count Two incorporates by reference paragraphs 1-17 and 19-31 of Count One. In addition, Count Two alleges that PSB was negligent in that it "should have known about the sludge deposit," and "negligently failed to disclose the presence of the sludge deposit to Zipp and RZ." (Count Two, ¶¶ 18, 19.) Count Three, in addition to incorporating-by-reference paragraphs 1-17 and 21-31
of Count One, alleges that PSB violated the Transfer Act when it sold the property to Zipp. Specifically, Count Three alleges that "[t]he Pioneer Facility was subject to the provisions of C.G.S. §§ 22a-134 et seq. ("the Transfer Act")." (Count Three, ¶ 18.) Count Three further alleges that "[t]he Property was a Part of the Pioneer Facility" because, "[h]istorically, a pipeline, which may still exist, ran beneath the Farmington River, connecting the Pioneer Facility to the Property." (Count Three, ¶¶ 19, 20.) As such, "[t]he Property . . . was also subject to the provisions of the Transfer Act." (Count Three, ¶ 20.) PSB did not submit a Transfer Act form when it sold the property to Zipp and RZ, in violation of the Transfer Act. (Count Three, ¶¶ 21, 22.) "Because PSB failed to submit a Transfer Act form . . ., it is strictly liable to RZ, and therefore, to RZ's successor in interest Krell, for all remediation costs incurred with respect to the Property." (Count Three, ¶ 22.)
At oral argument, the parties agreed that this Court could consider pleadings filed in connection with the plaintiffs motion for a prejudgment remedy, which was granted, and the defendant's now-pending motion for modification of that prejudgment remedy. The parties debated, at oral argument, whether the operative complaint properly contained alternate allegations of hazardous and non-hazardous environmental contamination.
PSB published notice of its dissolution in the Connecticut Law Journal on April 19, 1988 and April 26, 1988, and CT Page 16095 in the Hartford Courant on April 7, 1988 and April 18, 1988. (Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, Ex. A; Defendant's motion for summary judgment, Ex. D.) For purposes of this summary judgment motion, the defendant has conceded the existence of both the open mortgage found on the Land Records of the Town of Farmington and a liquidating trust. (Reply Memorandum in Support of Defendant's Motion for Summary Judgment.)
"Summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) Alvarez v. New HavenRegister. Inc., 249 Conn. 709, 714, ___ A.2d ___ (1999); see also Practice Book § 17-49 (formerly § 384). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under the applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) Rivera v.Double A Transportation, Inc., 248 Conn. 21, 24 A.2d ___ (1999).
General Statutes § 52-577, the general tort statute of limitations, provides as follows: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." (Emphasis added.) Although the defendant argues that General Statutes § 52-577c governs this cause of action, General Statutes § 52-577, the general tort statute of limitations, is the applicable statute of limitations. General Statutes § 52-577c applies to a cause of action based upon exposure to a hazardous chemical substance, mixture or pollutant.[1] JFC has alleged in its complaint that the sludge pit contains petroleum contamination. Notwithstanding the fact that petroleum" and "petroleum products" are presently included in § 52-577c (a)(3)'s definition of a "hazardous chemical substance or mixture," these terms were not covered by §52-577c prior to 1996. See Doty v. Mucci, 238 Conn. 800,679 A.2d 945 (1996).
The real estate transaction in this action occurred in 1987, CT Page 16096 at a time when § 52-577c did not include petroleum products, and therefore the transaction was not within the purview of §52-577c. As such, for purposes of this motion, the three-year statute of limitations found in General Statutes § 52-577, the general tort statute of limitations, is applicable.
Practice Book § 10-25 provides that, in its pleadings, "[t]he plaintiff may claim alternative relief based upon an alternative construction of the cause of action." "Pleading in the alternative is a well established practice in Connecticut."Presti v. Sorbo, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 151172 (May 13, 1999,Mintz, J.). "Alternative fact allegations made in good faith and based on genuine doubt are not admissions against interest so as to be admissible in evidence against the pleader. The pleader states the facts in the alternative because he is uncertain as to the true facts. Therefore he is not "admitting' anything other than his uncertainty." (Citations omitted; internal quotation marks omitted.) DeJesus v. Craftsman Machinery Co., 16 Conn. App. 558,567, 548 A.2d 736 (1988).
At oral argument, the defendant argued that the plaintiff improperly pleaded both hazardous and non-hazardous waste contamination. The plaintiff pleaded petroleum contamination in counts one and two, and a violation of the Connecticut Transfer Act in Count Three. The plaintiffs allegations are merely pleadings in the alternative, and are properly before the Court.
Corporate Dissolution Statutes
The former Connecticut Stock Corporations Act, General Statutes §§ 33-375, et seq., was in effect at the time PSB dissolved, although the Act was repealed in 1994.[2]
Section 33-379 of the Act, "Winding up," provided, in pertinent part: "(a) Upon dissolution of a corporation by resolution becoming effective or upon filing a certificate of dissolution by expiration, the corporation shall cause notice thereof to be published within thirty days thereafter in two successive issues of the Connecticut Law Journal and twice, not less than seven days apart, in a newspaper published in this state and having general circulation in the town of the corporation's principal office. (b) The board of directors of a dissolved corporation and their successors shall proceed to wind up the affairs of the corporation as expeditiously as practicable CT Page 16097 and shall act as a board of directors in accordance with the bylaws and the certificate of incorporation until the affairs of the corporation are completely wound up. . . . (c) Subject to the provisions of subsection (d) of this section, any action, suit or proceeding against a dissolved corporation for any right or claim existing at, or for any liability incurred prior to, dissolutionshall be barred if not commenced within three years after the last publication of the notice provided for in subsection (a) of this section. . . . (e) Nothing in this section shall extend any applicable period of limitation."[3] (Emphasis added.)
This Court has previously ruled that "[t]here are no exceptions to [General Statutes § 33-379]." Millbrook OwnersAssn., Inc. v. Hamilton Standard, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 556416 (July 16, 1996, Hennessey, J.). The three-year time limit found in General Statutes § 33-379 has been strictly construed by Connecticut courts. When a dissolved corporation gives proper statutory notice, and the plaintiff fails to assert its claims within the three-year statutory period, the plaintiff will be forever barred from bringing an action against the dissolved corporation. O'Connell v. McGann, Superior Court, judicial district of New Haven at New Haven, Docket No. 322093, (November 14, 1994, Martin, J.); Dimitriou v. State of Connecticut, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 357000 (June 10, 1992, Burns, J.).
Upon dissolution, PSB complied with the notice provisions of § 33-379 (a) by publishing proper notice of its dissolution in both the Connecticut Law Journal and the Hartford Courant, in accordance with the timing requirements of the statute. Based on the foregoing, because JFC has brought this action against PSB more than three years after PSB dissolved, JFC's action against PSB is barred by § 33-379's three year time limitation on bringing claims against a dissolved corporation.[4]
Corporate Existence/Winding Up
In a related Delaware case, City Investing CompanyLiquidating Trust v. Continental Casualty Co., 624 A.2d 1191
(Del.Supr. 1993), the Supreme Court of Delaware ruled that when a corporation dissolves and sets up a liquidating trust to assist in administering the corporate assets during a post-dissolution period, this trust serves as the corporation's continued existence, and as such, is capable of suing and being sued during CT Page 16098 the time that the trust is in existence. The court ruled that, although the three-year period established under Delaware's corporate dissolution statutes had passed, and the corporation itself was no longer subject to suit, the trust could be sued pursuant to both Delaware statute and the Trust Agreement.
 In a preliminary ruling, the Court of Chancery granted [the liquidating trust's] motion for summary judgment holding that [the dissolved corporation] no longer existed as a legal entity and was not subject to suit by reason of the three-year period under [the Delaware corporate dissolution statute]. The Court ruled, however, that the ultimate liability of [the liquidating trust] must be resolved through interpretation of the Trust Agreement. Thereafter . . . the Court ruled that under the relevant terms of the Trust Agreement, [the liquidating trust] had assumed [the dissolved corporation's] obligation under the Indemnification Agreement and [the plaintiffs] claim was not limited by the three-year period under [the Delaware corporate dissolution statute]. . . . The Vice Chancellor ruled . . ., that City Trust enjoyed a separate existence as a trust created for the purpose of permitting the trustees to extend the liquidating process, apart from the strictures of [the Delaware corporate dissolution statute], including its time bar for suit.
City Investing Company liquidating Trust v. Continental CasualtyCo., 624 A.2d 1191, 1194-95 (Del.Supr. 1993).[5]
The court in City Investing found that, "[b]y distributing its assets to a trust, [the dissolved corporation] was able to achieve substantial tax savings but at the same time it extended its winding up period by transferring its operations to a separate legal entity — [the liquidating trust]. Had [the dissolved corporation] elected to seek court approval to continue its existence "for such longer period' beyond the three-year term as necessary to wind up its affairs instead of creating [the liquidating trust], there is little question that its assets would be reachable by its creditor and subject to claims at the time [the plaintiff] filed its claim in 1990." City InvestingCompany Liquidating Trust v. Continental Casualty Co., supra, 624 A.2d 1196.
Significantly, the court further found that "[r]egardless of CT Page 16099 tax consequences, . . . a liquidating trust is the successor of the corporation whose assets it administers. A liquidating trust is formed to wind up the predecessor corporation's affairs and operates in the same manner as a dissolving corporation. . . . It is, in effect, the alter ego of the predecessor corporation." (Citation omitted; internal quotation marks omitted.) CityInvesting Company liquidating Trust v. Continental Casualty Co., supra, 624 A.2d 1197.
In the present action, the defendant has conceded the existence of the alleged liquidating trust, for purposes of this motion for summary judgment. This court finds persuasive the analysis set forth by the Delaware Supreme Court in CityInvesting Company Liquidating Trust v. Continental Casualty Co., supra, 624 A.2d 1191, and concludes that a question of fact remains as to whether the liquidating trust, PSB Associates Liquidating TRA, represents PSB's continued existence.[6]
Fraudulent Concealment
General Statutes § 52-595 provides for the tolling of applicable statutes of limitation where the defendant has fraudulently concealed from the plaintiff the existence of a cause of action, in favor of the plaintiff, against the defendant.[7] In actions involving allegations of fraudulent concealment, "[t]he question before [the Court] is whether the plaintiffs have adduced any credible evidence that [the defendant] fraudulently concealed the existence of the [plaintiffs] cause of action. To meet this burden, it [is] not sufficient for the plaintiffs to prove merely that it [is] more likely than not that the defendants . . . concealed the cause of action. Instead, the plaintiffs [have] to prove fraudulent concealment by the more exacting standard of clear, precise, and unequivocal evidence. . . . Under our case law, to prove fraudulent concealment, [a plaintiff is] required to show: (1) the defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the [plaintiffs] cause of action; (2) [the] defendant's intentional concealment of these facts from the [plaintiff]; and (3) [the] defendant's concealment of the facts for the purpose of obtaining delay on the [plaintiffs] part in filing a complaint on [its] cause of action. . . ." (Citations omitted; internal quotation marks omitted.) Bartone v. Robert L. Day Co., 232 Conn. 527, 532-33,656 A.2d 221 (1995),[8] Connell v. Colwell, 214 Conn. 242, 250-51,571 A.2d 116 (1990); see Fichera v. Mine Hill Corp. ,207 Conn. 204, 215, 541 A.2d 472 (1988). "The defendants' actions must have CT Page 16100 been directed to the very point of obtaining the delay [in filing the action] of which [they] afterward [seek] to take advantage by pleading the statute. . . ." (Citations omitted; internal quotation marks omitted.) Bound Brook Assn. v. Norwalk,198 Conn. 660, 666, 504 A.2d 1047, cert. denied, 479 U.S. 819,107 S.Ct. 81, 93 L.Ed.2d 36 (1986); Armellino v. Dowling, Superior Court, judicial district of New Haven at New Haven, Docket No. 330634 (May 16, 1995, Healey, JTR.).
"Fraudulent concealment of a cause of action at common law and under General Statutes § 52-595 has the effect of tolling the applicable statute of limitations by providing that a fraudulently concealed cause of action is deemed to accrue against a defendant when the plaintiff first discovers its existence." Kivlen v. Town of New Fairfield, Superior Court, judicial district of Danbury, Docket No. 295770 (June 25, 1992,Fuller, J.) "[W]hether General Statutes Sec. 52-595 is available to the [plaintiff], in tolling the statute of limitations, is a question of fact that should be determined at trial by the trier of fact." Bartone v. Robert L. Day Co., Inc., Superior Court, judicial district of Middlesex, Docket No. 062749 (June 24, 1993,Arena, J.), aff'd, 232 Conn. 527, 656 A.2d 221 (1995).
"[P]laintiffs seeking to toll the statute of limitations on the basis of fraudulent concealment must show that the [defendant's] conduct or representations [were] directed to the very point of inducing a delay in the bringing of a lawsuit to a time which the defendant thereafter claims bars the action as not brought within the statute of limitations. . . . Further, plaintiffs must have been ignorant of the existence of their right of action, and the defendants must have intended, through their conduct, that plaintiffs be kept in ignorance. . . . The evidentiary burden to establish fraudulent concealment in Connecticut is not an easy hurdle to overcome. A plaintiff will not prove fraudulent concealment through evidence that it was more likely than not that the defendant had concealed the cause of action. . . . Fraudulent concealment must be strictly proven with clear, precise and unequivocal evidence." (Citation omitted.) Hoskins v. Titan Value Equities Group, Superior Court, judicial district of New Haven at New Haven, Docket No. 373071 (April 7, 1999, Silbert, J.). "The plaintiff must also show . . . that in the absence of a fiduciary relationship the defendant must be guilty of some affirmative act of concealment." Bartonev. Robert L. Day Co., Inc., supra, Superior Court, Docket No. 062749. CT Page 16101
"A duty to speak exists when a vendor of property conceals from the vendee a material fact affecting it." Bartone v. RobertL. Day Co., Inc., supra, Superior Court, Docket No. 062749. A "defendant corporation, vendor, does have certain legal obligations concerning disclosure of material defects to the plaintiffs, vendees," and whether the defendant knowingly failed to disclose any defects is a genuine issue of material fact. Id. "A vendor of property may not do anything to conceal from the vendee a material fact affecting it, or say or do anything to divert or forestall an intended inquiry by him, or deliberately hide defects, for, in so doing, he is not merely remaining silent, but is taking active steps to mislead. . . . [T]he nondisclosure must be by a person intending or expecting thereby to cause a mistake by another to exist or to continue, in order to induce the latter to enter into or refrain from entering into a transaction." (Citations omitted, internal quotation marks omitted.) Wedig v. Brinster, 1 Conn. App. 123, 132, 469 A.2d 783
(1983)
Although no Connecticut cases on point were found, the Eighth Circuit Court of Appeals has ruled that "[n]ormally in a statute of limitations context fraudulent concealment . . . [is a question] of fact unsuited for summary judgment." Hines v. A.O.Smith Harvestore Products. Inc., 880 F.2d 995, 999 (8th Cir. 1989); Givens v. A.H. Robbins Co., Inc., 751 F.2d 261, 264 (8th Cir. 1984).
The plaintiff has not presented any evidence of fraudulent concealment in its summary judgment motion. During oral argument, however, the parties agreed that the briefs filed in connection with the plaintiffs prior motion for a prejudgment remedy would be used to supplement the summary judgment memoranda. Therefore, the documents attached to the plaintiffs February 16, 1999 application for a prejudgment remedy, an affidavit from one of the plaintiffs attorneys, as well as environmental documents, have been considered.[9]
The affidavit and supporting documents, when read in the light most favorable to the plaintiff, establish an issue of fact which cannot properly be decided on a motion for summary judgment. The evidence submitted establishes that PSB owned and operated the subject property for several years prior to selling the property to the plaintiff. In addition, the evidence establishes that PSB generated sludge at its manufacturing CT Page 16102 facility, and that the sludge found at both the manufacturing facility and at the plaintiffs property contained the same chemicals. The evidence also establishes that PSB knew of the contamination at its manufacturing facility in 1986, at the latest, when PSB was ordered by DEP to clean up the property at the facility. Further, the evidence establishes that the sludge contamination on the subject property had been covered with sand at some time prior to the time the plaintiff and the defendant were negotiating the sale of the property, and that the sand covering the sludge pit concealed the contamination from the plaintiff at the time of the negotiations.
In light of all the evidence, issues of fact remain as to: (1) Whether PSB knew of the sludge pit at the time the plaintiff negotiated the purchase of the property from PSB in 1987; and if so, (2) whether PSB fraudulently concealed the sludge pit from the plaintiff at the time of the negotiations; and, (3) whether PSB concealed the sludge pit from the plaintiff for the purpose of obtaining delay on the plaintiffs part in filing a complaint due to the contamination.
Tolling
 Corporate Survival Statute
No Connecticut cases involving both General Statutes § 33-379 and fraudulent concealment have been found. Courts outside of Connecticut, however, interpreting time limitations found in state corporate dissolution statutes similar to Connecticut's § 33-379, have ruled that fraudulent concealment does not toll the statutory period for asserting claims against a dissolved corporation.
In Canadian Ace Brewing Co. v. Anheuser-Busch, Inc., the United States District Court for the Northern District of Illinois, Eastern Division held that allegations of fraudulent concealment will not toll corporate "survival" statutes. The plaintiff corporation, Canadian Ace Brewing, had been dissolved nearly five years before it filed its complaint against Anheuser-Busch, alleging that the Illinois corporate survival statute was tolled because the defendant had fraudulently concealed the plaintiffs cause of action. The court stated that "[i]t must be emphasizedthat the corporate extension statute is not a statute oflimitations. . . . A statute of limitations begins to run upon the accrual of a party's cause of action, while the corporate CT Page 16103 statute starts running upon the dissolution of the corporation." (Internal quotation marks omitted; emphasis added.) Canadian AceBrewing Co. v. Anheuser-Busch, Inc., 448 F. Sup. 769, 772 (N.D. Ill. 1978), aff'd, 601 F.2d 593 (7th Cir. 1979), cert. denied,444 U.S. 884, 100 S.Ct. 175 (1979), quoting Litts v. RefrigeratedTransport Co., 375 F. Sup. 675, 678 (M.D.Pa. 1973).
"The purposes of a statute of limitations and a survival statute are also dissimilar. The former were enacted to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred or extinguished, if they ever did exist. To hold that concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to protect [against] fraud the means by which it is made successful and secure. Bailey v. Glover, [88 U.S. 342, 349, 22 L.Ed 636 (1874)]. Corporate survival statutes, however, were enacted both to aid in the winding up process of a corporation following its dissolution and also to prevent the abuse whereby a corporation would dissolve in order to escape creditors. . . . The cases are legion for the proposition that the right of a corporation to exist beyond its date of dissolution is purely one of statutory origin." Canadian Ace Brewing Co. v.Anheuser-Busch, Inc., supra, 448 F. Sup. 772.
In its ruling, the Canadian Ace Brewing court stated that "[w]hat plaintiff in effect contends is that it possessed an asset in the nature of a claim against the defendant of which it was unaware during the period of its existence including the two-year survival period. Now from the grave, so to speak, it seeks to pursue that claim. We find no basis for concluding that we have the power to raise it from the dead to enable it to do so. We find therefore, that the principles of fraudulent concealment have no application to this action brought by a corporation dissolved nearly five years prior to the filing of the complaint." Canadian Ace Brewing Co. v. Anheuser-Busch. Inc., supra, 448 F. Sup. 773.
General Statutes § 33-379 is a corporate survival statute, not a statute of limitations. See, e.g., MillbrookOwners Assn., Inc. v. Hamilton Standard, supra, Superior Court, Docket No. 556416; O'Connell v. McGann, supra, Superior Court, Docket No. 322093; Dimitriou v. State of Connecticut, supra, CT Page 16104 Superior Court, docket No. 357000. As such, if the Court accepts the Canadian Ace Brewing analysis, § 33-379 cannot be tolled, even if the plaintiff presents sufficient evidence to support its fraudulent concealment claim. Therefore, the plaintiff cannot rely on the doctrine of fraudulent concealment to preserve any stale claims under § 33-379.
General Statutes § 52-577
"The purpose of tolling doctrines such as the doctrine of fraudulent concealment is to prevent a party from profiting from its own misconduct. See Bound Brook Assoc. v. Norwalk,198 Conn. 660, 665 (1986)." Dudrow v. Ernst Young, Superior Court, judicial district of Waterbury, Docket No. 144211 (January 12, 1999, Hodgson, J.) The Connecticut Supreme Court addressed the tolling of a negligence statute of limitations, General Statutes § 52-584 (medical malpractice), in Connell v. Colwell, supra, 214 Conn. 242. The court ruled that the plaintiff failed to meet its burden of proof with respect to claims of fraudulent concealment, and therefore found that the statute of limitations was not tolled. It can be argued, however that the court impliedly ruled that statutes of limitation for causes of action which arise at common law, such as negligence, are susceptible to tolling. Connell v. Colwell, supra, 214 Conn. 242; see Dudrow v.Ernst Young, supra, Superior Court, Docket No. 144211.
Prior to Connell v. Colwell, supra, 214 Conn. 242, the Supreme Court ruled in Fichera v. Mine Hill Corp. , 207 Conn. 204,541 A.2d 472 (1988), that the statute of limitations found in the Connecticut Unfair Trade Practices Act, General Statutes § § 42-110a, et seq., could not be tolled due to fraudulent concealment. The court ruled that "[i]n construing our general tort statute of limitations, General Statutes § 52-577, which allows an action to be brought within three years from the date of the act or omission complained of," we have concluded that the history of that legislative choice of language precludes any construction thereof delaying the start of the limitation period until the cause of action has accrued or the injury has occurred. . . . We have reached a similar conclusion in respect to the use of' act or omission complained of in our personal injury statute of limitations, General Statutes § 52-584, prior to its amendment in 1969 to provide an alternative date for commencement of the limitation period." Fichera v. Mine HillCorp. , 207 Conn. 204, 212, 541 A.2d 472 (1988). Similarly,Dudrow v. Ernst young, Superior Court, judicial district of CT Page 16105 Waterbury, Docket No. 144211 (January 14, 1999, Hodgson, J.), the plaintiffs unsuccessfully sought to toll a statute of limitations involving a statutory right of action which did not arise at common law, based on the defendant's alleged fraudulent concealment. The plaintiffs asserted that "[t]he statutory tolling doctrine for fraudulent concealment set forth in Conn. Gen. Stat. § 52-595 applies despite the ruling to the contrary in Fichera v. Mine Hill Corp. , supra, Conn. 204. The plaintiffs . . . argued that the Supreme Court retreated from Fichera in Connell v. Colwell, 214 Conn. 242 (1990)." Dudrow v.Ernst Young, supra, Superior Court, Docket No. 144211. The court agreed that the Supreme Court recognized the possibility of tolling § 52-577 in Connell v. Colwell, however, the court disagreed with the plaintiffs' interpretation of Connell v.Colwell, finding that "[Connell v. Colwell] involved claims only of medical negligence, with no claims based on statutes imposing liability for conduct not actionable at common law. Accordingly,Connell v. Colwell, supra, has not had the claimed effect on the ruling in Fichera." Id.
Significantly, the Dudrow court ruled that "[t]he statutory tolling doctrine for fraudulent concealment set forth at Conn. Gen. Stat. § 52-595 is available as to [statutory claims that arise at common law], since the holding in Fichera v. Mine HillCorp., supra, related only to statutory claims of the type described therein." Dudrow v. Ernst Young, supra, Superior Court, Docket No. 144211.
The Supreme Court explained Fichera v. Mine Hill Corp. , supra,207 Conn. 204, in Willow Springs Condo. Assn., Inc. v. 7th BRTDev. Corp., 245 Conn. 1,717 A.2d 77 (1998), in which it stated: "Fichera stands for the proposition that an arguably fraudulent or deceptive act that is itself claimed to be a CUTPA violation that occurred more than three years before the filing of the action cannot, by itself, toll the statute of limitations."Willow Springs Condo. Assn., Inc. v. 7th BRT Dev. Corp., supra,245 Conn. 47. This explanation appears to soften the Fichera
ruling to allow for tolling under unspecified circumstances, even when a statutory cause of action which does not arise at common law, such as CUTPA, is involved.
Regardless of whether the Court relies on Willow SpringsCondo. Assn., Inc. v. 7th BRT Dev. Corp., supra, 245 Conn. 1, the decision in Dudrow v. Ernst Young, supra, Superior Court, Docket No. 144211, properly distinguishes the Connecticut Supreme CT Page 16106 Court's ruling in Connell v. Colwell, supra, 214 Conn. 242, from that in Fichera v. Mine Hill Corp. , supra, 207 Conn. 204, based on whether the statute at issue applies to a cause of action which arises at common law. In the instant case, JFC's claims of fraudulent concealment and negligence are causes of action which arise at common law.[10] The plaintiff first discovered the concealed sludge pit in the fall of 1996. As such, pursuant to Connell v. Colwell, General Statutes § 52-577 was tolled until the fall of 1996, with respect to JFC's negligence claims, when the sludge pit was first discovered. See Connell v. Colwell, supra, 214 Conn. 242.
Hazardous Waste and the Connecticut Transfer Act
The plaintiff has alleged hazardous waste contamination in Count Three of the operative complaint. Count Three independently alleges a violation of General Statutes § 22a-134, et seq., the "Transfer Act," which applies to the transfer of hazardous waste establishments. The Transfer Act is inapplicable to the present action because, as noted infra, petroleum and petroleum products were not considered hazardous waste at the time PSB transferred the property to the plaintiff in 1987. Therefore, summary judgment is granted with respect to count three of the operative complaint.
Accordingly, summary judgment is denied with respect to counts one (fraudulent concealment) and two (negligence) of the plaintiffs complaint, and granted with respect to Count Three (the Transfer Act).
Hennessey, J.