**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| ROBERTO G. PANTOJA, AS SELLERS' REPRESENTATIVE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 2025-1108-BWD |
| FPMCM, LLC, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM OPINION GRANTING MOTION TO DISMISS**

Date Submitted: June 10, 2026
Date Decided: June 24, 2026

Michael J. Maimone, Brittany M. Giusini, Gabriella C. Mouriz, BARNES & THORNBURG LLP, Wilmington, DE; *Attorneys for Plaintiff Roberto G. Pantoja*.

Arthur G. Connolly, III, Alan R. Silverstein, CONNOLLY GALLAGHER LLP, Wilmington, DE; OF COUNSEL: James P. Flynn, EPSTEIN BECKER & GREEN, P.C., Newark, NJ; Jonathan Brollier, Maurice Wells, EPSTEIN BECKER & GREEN, P.C., Columbus, OH; *Attorneys for Defendant FPMCM, LLC*.

**DAVID, V.C.**

FPMCM, LLC ("Defendant" or "Fast Pace") acquired nonparty First Care, LLC ("First Care") pursuant to a merger agreement (the "Merger Agreement") in 2022. Under the Merger Agreement, Fast Pace agreed to "preserve and retain . . . any books and records, including electronic files, . . . reasonably required in connection with any audit, accounting, Tax, litigation or similar reports or filings with any Governmental Authority" for five years, and to provide plaintiff Roberto G. Pantoja ("Plaintiff"), as representative for the sellers, "access" to such books and records "upon reasonable prior notice."

Two years after closing, the U.S. Attorney's Office for the Eastern District of Kentucky initiated an investigation into business practices of First Care's subsidiary, and Fast Pace noticed an indemnification claim arising from that investigation. While corresponding about the investigation, Plaintiff learned that after the merger, Fast Pace did not preserve email accounts for all employees with involvement in the facts underlying the investigation.

Plaintiff demanded that Fast Pace provide him access to emails and electronic records concerning the subject of the investigation and indemnification claim. When Fast Pace failed to comply, Plaintiff brought this action, seeking an order of specific performance requiring Fast Pace to comply with the Merger Agreement by producing pre-merger email accounts and other electronic records, and declaring that

1

Fast Pace breached the Merger Agreement by destroying documents that it was required to preserve and retain.

Fast Pace has moved to dismiss the action on two grounds. First, Fast Pace contends that this Court lacks subject matter jurisdiction over the dispute. Because Plaintiff seeks an equitable remedy—specific performance of a contractual information right—the Court has equitable jurisdiction. Second, Fast Pace argues that the complaint fails to state a claim upon which relief may be granted. The provision of the Merger Agreement on which Plaintiff relies cannot reasonably be read to encompass the emails and other records Plaintiff seeks. The motion to dismiss is therefore granted.

## I. BACKGROUND[1]

### A. Fast Pace Acquires First Care In A Merger.

First Care is an urgent care provider and outpatient medical service that maintains a regional healthcare network in Indiana and Kentucky. Compl. ¶¶ 21, 27. First Care operates through its subsidiaries Brock Medical, LLC ("Brock

---

[1] The following facts are taken from Plaintiff's Verified Complaint (the "Complaint") and the documents incorporated by reference therein. Compl., Dkt. 1. The transcript of the June 10, 2026 oral argument has not been finalized. Citations to "Draft Tr. __" refer to a draft transcript of the June 10, 2026 oral argument. *See* Draft Tr. of 6-10-26 Oral Arg. on Def.'s Mot. to Dismiss [hereinafter Draft Tr.].

Medical") and FC Indiana, LLC (together with Brock Medical, the "Subsidiaries"). *Id.* ¶¶ 2, 27.

In 2022, First Care agreed to merge with Fast Pace, another urgent care provider in the Midwest and Southeast United States (the "Merger"). *Id.* ¶ 32. On July 15, 2022, First Care, its equity holders, Plaintiff (as "Representative" for the "Seller Parties"[2]), and Fast Pace entered into the Merger Agreement, under which Fast Pace acquired all outstanding shares of First Care for $61.5 million before adjustments. Compl. ¶ 32; Merger Agt. §§ 1.7, 8.2. At closing, Fast Pace deposited $250,000 (the "Adjustment Escrow Fund") and $6,150,000 (the "Indemnity Escrow Fund") into an escrow account governed by a separate agreement (the "Escrow Agreement"). Compl. ¶ 4; *id.*, Ex. B [hereinafter Escrow Agt.]; Merger Agt. § 1.8(b).

Article 5 of the Merger Agreement governs the parties' contractual rights to indemnification. Section 5.2(a) addresses Fast Pace's right to indemnification from the sellers:

> Indemnifying Owners, severally and not jointly (in accordance with their respective Indemnity Pro Rata Shares), agree to indemnify, defend and hold harmless from and against, and pay or reimburse [Fast Pace] and its Affiliates and Affiliated Practices (including the [Subsidiaries]) and their respective equity holders, directors, managers, officers, agents

---

[2] The "Seller Parties" include Plaintiff, additional "Owners" listed on an exhibit to the Merger Agreement, and other First Care securityholders. Compl., Ex. A [hereinafter Merger Agt.] at 54–55; *id.* at Schedule A.

3

and representatives (each, a "Parent Indemnified Party" and collectively, the "Parent Indemnified Parties") for any and all Adverse Consequences that any Parent Indemnified Party may suffer, sustain, incur or become subject to, directly or indirectly arising out of or relating to: (i) any inaccuracy in or breach of (A) any of the representations or warranties (other than any of the Fundamental Representations) of the Company contained in Article 3 of this Agreement or (B) any of the Fundamental Representations of the Company; (ii) the failure of any Divested Company to perform any of its agreements, covenants or obligations contained in this Agreement; (iii) any Excluded Liability; and (iv) Fraud by or on behalf of the Company.

Merger Agt. § 5.2 (emphasis omitted).

Section 5.4 of the Merger Agreement sets out indemnification procedures under which a party seeking indemnification must give written notice of its claim. *Id.* § 5.4(a). In tandem, Section 5(a) of the Escrow Agreement permits Fast Pace "to . . . deliver to the Escrow Agent and Representative a written notice demanding payment in connection with a claim pursuant to Article 5 of the Merger Agreement . . . ." Escrow Agt. § 5(a). Under the Escrow Agreement, Plaintiff may send a written response stating "whether [he] in good faith agrees or disagrees that the Claim asserted by [Fast Pace] is a valid Claim under the Merger Agreement and/or agrees or disagrees with respect to the amount of the Claim." *Id.* § 5(b). If Plaintiff timely delivers such a response, any disputed amount "shall be held by the Escrow Agent" until it receives a joint written instruction from the parties or "upon the Escrow Agent's receipt of a final, non[-]appealable judgment, order, award or decree

4

of a court or other judicial body of competent jurisdiction that decided the Disputed Claim." *Id.* § 5(b)–(c).

Section 8.20(b) of the Merger Agreement requires Fast Pace to "preserve and retain . . . books and records . . . reasonably required" for specified purposes for five years after closing:

> For a period of five (5) years after the Closing Date, [Fast Pace] shall preserve and retain, or cause the Acquired Companies to preserve and retain, any books and records, including electronic files, of the Acquired Companies existing prior to the Closing and reasonably required in connection with any audit, accounting, Tax, litigation or similar reports or filings with any Governmental Authority; provided, that such access will be upon reasonable prior notice, during normal business hours, at the Representative's expense and conducted in a manner so as not to unreasonably interfere with the business of [Fast Pace] and its Subsidiaries and Affiliated Practices; provided, however, that [Fast Pace] shall be permitted to dispose of such books and records in the ordinary course of business consistent with past practice of the Acquired Companies.

Merger Agt. § 8.20(b). The parties agree that Section 8.20(b) also entitles Plaintiff to "access" such books and records.

## B. Fast Pace Provides Notice Of Indemnification Claims Arising From A Government Investigation.

In January 2024, the U.S. Attorney's Office for the Eastern District of Kentucky initiated an investigation into Brock Medical's business practices (the "Investigation"). Compl., Ex. C at 1–2.

On January 12, 2024, Fast Pace sent a letter to Plaintiff providing written notice of an indemnification claim arising from the Investigation (the "Notice"). *Id.*

5

The Notice asserted that "[t]he U.S. Attorney's Office's commencement of an investigation constitutes a Third Party Claim as defined by Section 5.4(a) of the Merger Agreement" and "[t]he allegations, if any, ultimately made by the U.S. Attorney's Office in connection with the investigation could reveal one or more breaches of the representations and warranties of the Company contained in Article 3 of the Merger Agreement." *Id.* at 2. The Notice advised that Fast Pace "intend[ed] to maintain and assume control of the defense of the Claims." *Id.* The Notice also demanded that the Escrow Agent reserve the full amount held in the Indemnity Escrow Fund. *Id.*, Ex. A.

On January 30, Plaintiff sent a response disputing Fast Pace's indemnification claim (the "January 30 Response"). Compl. ¶¶ 42–43; *id.*, Ex. E. The January 30 Response asked that Plaintiff "be regularly apprised of any updates with respect to the U.S. Attorney's Office's investigation" and "be afforded the opportunity to participate in the defense of, and any other applicable rights under Section 5.4 of the Merger Agreement in respect of, such investigation and any related or otherwise applicable Third Party Claims." Compl., Ex. E at 2. The January 30 Response also requested that the Indemnity Escrow Fund be transferred to an interest-bearing account pending resolution of the claims. Compl. ¶¶ 42–43; *id.*, Ex. E.

On September 10, Fast Pace sent a second letter to Plaintiff providing written notice of additional indemnification claims. Compl., Ex. D. On October 14,

6

Plaintiff sent a response disputing Fast Pace's additional indemnification claims. Compl., Ex. F at 2.

### C. Plaintiff Learns That Fast Pace May Have Failed To Preserve Electronic Records.

On March 11, 2025, the U.S. Attorney's Office for the Eastern District of Kentucky issued a civil investigative demand to Fast Pace, seeking information "concerning allegations that Fast Pace and its related entities knowingly caused the submission of false or fraudulent claims to federally funded health insurance programs in connection with COVID testing, and to federally funded pandemic-relief programs[.]" Compl., Ex. H at 1.

According to Plaintiff, on May 4, while corresponding about the Investigation, Fast Pace told Plaintiff that "following completion of the [M]erger, Fast Pace's Chief Technology Officer deliberately destroyed, or permitted the destruction of, all pre-[M]erger email accounts and associated electronic records from the Subsidiaries." Compl. ¶ 53.

On June 16, Plaintiff sent Fast Pace a letter asserting that Fast Pace's purported destruction of email accounts and other records constituted a breach of Section 8.20 of the Merger Agreement:

> We first learned of th[e] destruction on May 4, 2025, when Fast Pace's counsel informed our counsel that sometime after the Merger Agreement was consummated Fast Pace's Chief Technology Officer . . . intentionally chose to destroy, or allowed to be destroyed, all emails that [Fast Pace] had obtained from First Care in connection with the

7

Merger Agreement. Subsequently, [Fast Pace] chose to part ways with its CTO. To date, that is all we know. Notably[,] we do not know when this deletion occurred, when [Fast Pace] (as opposed to its counsel) learned of the deletion, what possible justification could have been offered for doing so, and who else at [Fast Pace] knew of or authorized the deletion. We expect these are facts that we—and the government— will learn in the coming months. But what we do know is enough.

Section 8.20 of the Merger Agreement[] states that [Fast Pace] "shall preserve and retain, or cause the Acquired Companies to preserve and retain, any books and records, including electronic files, of the Acquired Companies existing prior to the Closing and reasonably required in connection with any audit, accounting, Tax, litigation or similar reports or filings with any Governmental Authority." Information contained in [First Care's] email system, which has now been destroyed, plainly falls under this provision.

Compl., Ex. I. Plaintiff asserted that Fast Pace's "actions have destroyed its own ability to claim indemnity through the Escrow Amount (or otherwise)" and "demand[ed] that [Fast Pace] immediately notify the Escrow Agent that the Escrow Amount should be released." *Id.* at 2–3.

On July 14, Fast Pace sent Plaintiff a letter response, claiming, among other things, that "Fast Pace has fully complied with the Merger Agreement, including Section 8.20, and long before May 4, 2025[,] Fast Pace put [Plaintiff] (and others) on notice of how preservation of legacy First Care emails would occur." Compl., Ex. J at 2. Fast Pace further clarified that "it does not appear, based on our current understanding, that the legacy email boxes of those First Care employees continuing at Fast Pace were fully sunsetted" and that "First Care communications with counsel

8

and advisors on such topics may exist on the systems of such third parties." *Id.* at 2–3.

On August 8, Plaintiff responded to Fast Pace's July 14 letter (the "August 8 Response"). The August 8 Response demanded that Fast Pace produce certain information pursuant to Section 8.20 of the Merger Agreement:

> To properly evaluate the validity of Fast Pace's HRSA[-]related claims, including any actions Fast Pace may have taken that prevented the Representative from responding in a timely and informed ma[nn]er, and to assess[] the overall defensibility of those claims, we request access to the following, pursuant to Section 8.20 of the Merger Agreement:
>
> > 1. All communications to or from HRSA or any U.S. government agency or contractor (including, but not limited to, the "CBE Group, Inc.") regarding the PRF referenced in Fast Pace's September 10, 2024, Claim Notice. We expect access to the full universe of such communications and believe any electronic correspondence concerning the PRF may have been sent to or from the following email addresses:
> > > a. adeane@firstcareclinics.com
> > > b. wpantoja@firstcareclinics.com
> > > c. rkaeser@firstcareclinics.com
> > > d. ematherly@firstcareclinics.com
> > > e. dcarnavil@firstcareclinics.com
> > > f. asparks@firstcareclinics.com
> > > g. ttowne@firstcareclinics.com
> >
> > In addition, hard copy correspondence from HRSA may have been sent to the following addresses:
> > > a. First Care LLC, Brock Medical & Brock Medical LLC, 4560 Trousdale Drive Suite 100, Nashville, Tennessee 37204
> > > b. First Care LLC, Brock Medical & Brock Medical LLC, P.O. BOX 40166, Nashville, TN 37204
> > > c. First Care LLC, Brock Medical & Brock Medical LLC, PO Box 5802, Carol Stream, IL, 60197

9

> d. First Care's Seymour clinic, 1202 E Tipton St, Seymour, IN 47274
>
> e. First Care's Beford Clinic, 2418 16th St, Bedford, IN 47421
>
> . . .
>
> Finally, we understand that Fast Pace's representatives responding to the Inquiry have withheld certain materials previously provided to the government because they do not specifically relate to the pre-merger period. We have explained that we believe all information provided to the government as part of the Inquiry must also be provided to the Representative under the Merger Agreement. Regardless of the time period to which such materials pertain, if Fast Pace expects to seek reimbursement from the Indemnity Escrow Amount, the Representative must be given full access to all such materials. Accordingly, please produce those materials.

Compl., Ex. K at 3–4.

### D. Procedural History

On September 29, 2025, Plaintiff initiated this action through the filing of a Verified Complaint (the "Complaint"). Compl., Dkt. 1. Count I of the Complaint seeks an order for specific performance requiring Fast Pace to comply with Section 8.20(b) of the Merger Agreement by producing the Subsidiaries' pre-Merger email accounts and other electronic records sought in his August 8 Response (the "Requested Electronic Documents"). *Id.* ¶¶ 83–99. Count II seeks a declaratory judgment that Fast Pace breached Section 8.20(b) of the Merger Agreement by destroying certain Requested Electronic Documents when it was required to preserve and retain them, and that the Indemnity Escrow Fund must be released. *Id.* ¶¶ 100–

10

10. Count III seeks a declaratory judgment that Plaintiff is entitled to indemnification as a result of Fast Pace's breach of the Merger Agreement. *Id.* ¶¶ 111–22.

Fast Pace then moved to dismiss the Complaint (the "Motion to Dismiss").[3] The Court heard oral argument on the Motion to Dismiss on June 10, 2026.

## II.   ANALYSIS

Fast Pace has moved to dismiss the Complaint under Court of Chancery Rules 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted. For reasons explained below, the Motion to Dismiss for lack of subject matter jurisdiction is denied, but the Motion to Dismiss for failure to state a claim is granted.

### A.   The Court Has Subject Matter Jurisdiction Over Plaintiff's Request For Specific Performance Of A Contractual Information Right.

As a threshold matter, Fast Pace argues that this Court lacks subject matter jurisdiction over Plaintiff's claims. Because "[d]etermining whether this Court has

---

[3] On December 5, Fast Pace filed its opening brief in support of the Motion to Dismiss. Def. FPMCM, LLC's Opening Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl., or in the Alternative, to Stay [hereinafter OB], Dkt. 16. On January 20, 2026, Plaintiff filed his answering brief in opposition to the Motion to Dismiss. Pl. Roberto G. Pantoja's, as Sellers' Representative, Answering Br. in Opp'n to Def. FPMCM, LLC's Mot. to Dismiss or, in the Alternative, to Stay [hereinafter AB], Dkt. 17. On February 19, Fast Pace filed its reply brief in further support of the Motion to Dismiss. Def. FPMCM, LLC's Reply Br. in Supp. of its Mot. to Dismiss Pl.'s Verified Compl. or, in the Alternative, to Stay [hereinafter RB], Dkt. 18.

subject matter jurisdiction is a necessary predicate to reaching any of the Plaintiff's substantive claims[,]" I address this basis for dismissal first. *Hagler v. Evolve Acq. LLC*, 2021 WL 6123549, at *4 (Del. Ch. Dec. 28, 2021).

"The Court of Chancery will grant a Rule 12(b)(1) motion to dismiss 'if it appears from the record that the Court does not have jurisdiction over the claim.'" *Yu v. GSM Nation, LLC*, 2017 WL 2889515, at *2 (Del. Ch. July 7, 2017) (quoting *Medek v. Medek*, 2008 WL 4261017, at *3 (Del. Ch. Sep. 10, 2008)). "The Court of Chancery is a court of limited jurisdiction." *Id.* "As Delaware's Constitutional court of equity, the Court of Chancery can acquire subject matter jurisdiction over a cause in only three ways, namely, if: (1) one or more of the plaintiff's claims for relief is equitable in character, (2) the plaintiff requests relief that is equitable in nature, or (3) subject matter jurisdiction is conferred by statute." *Candlewood Timber Gp., LLC v. Pan Am. Energy, LLC*, 859 A.2d 989, 997 (Del. 2004).

"It is well-established that the Court of Chancery has subject matter jurisdiction where . . . a party[] . . . seeks an equitable remedy, such as specific performance . . . ." *ISS Facility Servs., Inc. v. JanCo FS 2, LLC*, 2023 WL 4096014, at *1 (Del. Ch. June 20, 2023). The Court has subject matter jurisdiction over this dispute because Plaintiff seeks specific performance of a contractual information right under Section 8.20(b) of the Merger Agreement, which is an equitable remedy. *See* Compl. ¶¶ 83–99.

Fast Pace raises two primary arguments to dispute the Court's equitable jurisdiction over Plaintiff's claims. First, Fast Pace argues that Plaintiff does not have a genuine need for specific performance of a contractual information right when he can obtain similar information through discovery in a breach of contract action for money damages. Fast Pace correctly observes that "[a]lthough specific performance is an equitable remedy upon which equity jurisdiction might be predicated, that is true only if the complaint, objectively viewed, discloses a genuine need for such equitable relief." *Candlewood Timber Gp., LLC*, 859 A.2d at 997. "[A] judge in equity will take a practical view of the complaint, and will not permit a suit to be brought in Chancery where a complete legal remedy otherwise exists but where the plaintiff has prayed for some type of traditional equitable relief as a kind of formulaic 'open sesame' to the Court of Chancery." *Int'l Bus. Machs. Corp. v. Comdisco, Inc.*, 602 A.2d 74, 78 (Del. Ch. 1991).

Fast Pace's argument fails to persuade me that the Court lacks subject matter jurisdiction here. This Court regularly exercises its broad equitable powers to specifically enforce contractual information rights.[4] Fast Pace may be right that

---

[4] *See, e.g.*, *DRS Fam. Hldgs., Inc. v. Regal Buyer, LLC*, 2026 WL 668442, at *1 (Del. Ch. Mar. 10, 2026) (enforcing contractual information right under a membership interest purchase agreement); *In re LMPG, Inc. Litig.*, C.A. No. 2025-0144-BWD, at 32:2–21 (Del. Ch. June 26, 2025) (TRANSCRIPT) (resolving request to enforce contractual information

13

documents to which Plaintiff is contractually entitled under Section 8.20(b) of the Merger Agreement could overlap with discovery exchanged in a breach of contract action filed in a court of law. But Plaintiff's contractual entitlement to information under the Merger Agreement is distinct from his entitlement to discovery under court rules in litigation. A plaintiff may face hurdles to obtaining documents in discovery—such as a stay of discovery through dispositive motion practice and the burden to demonstrate the relevance and proportionality of its requests—that make discovery an inadequate substitute for a party who is contractually entitled to information.

Second, Fast Pace argues that an order compelling specific performance of its contractual obligation to produce books and records would be futile because Plaintiff has alleged that the Requested Electronic Documents "no longer exist or cannot be fully recovered." OB at 24. As I understand the Complaint, Fast Pace's counsel

---

rights under an earnout procedure); *Invictus Special Situations Master I, L.P. v. Invictus Glob. Mgmt., LLC*, 2024 WL 1646093, at *7 (Del. Ch. Apr. 17, 2024) (enforcing contractual information rights in a management agreement); *Grand Acq., LLC v. Passco Indian Springs DST*, 145 A.3d 990, 996 (Del. Ch. 2016) (enforcing contractual information rights to "inspect, examine and copy" a trust's books and records under a trust agreement); *see also O'Neill v. Summit Materials, Inc.*, 2025 WL 3688741, at *5 (Del. Ch. Dec. 19, 2025) (resolving request for books and records where the parties entered into standing agreements that contractually replicated a stockholder's statutory inspection rights); *In re Zendesk, Inc. Section 220 Litig.*, 2023 WL 5496485, at *7 (Del. Ch. Aug. 25, 2023) (same), *report and recommendation adopted*, (Del. Ch. 2023), *and judgment entered*, (Del. Ch. 2023).

first represented in May 2025 that all email accounts had been destroyed, then clarified in July that some "email correspondence was preserved within the Fast Pace email system." Compl. ¶ 71; *id.*, Ex. J at 3; *see also* Draft Tr. at 13:1–10 (explaining that "there is a possibility that a less than full set of those emails" exists but "there will be some email information" available for employees who remained with the company after the Merger). Because Plaintiff does not know whether or which of the Requested Electronic Documents still exist, Count I seeks specific performance of the information right to the extent documents can be produced, while Count II seeks a declaration that Fast Pace breached the Merger Agreement to the extent documents were not preserved. If any of the Requested Electronic Documents still exist, an order of specific performance may be feasible; I therefore cannot conclude at this stage that equitable relief would be futile.

Because the Court has subject matter jurisdiction over Plaintiff's equitable request for specific performance of a contractual information right, it may exercise jurisdiction over the remainder of the dispute under the clean-up doctrine. The Motion to Dismiss on jurisdictional grounds is therefore denied.[5]

---

[5] Because the Court has subject matter jurisdiction over Plaintiff's request for equitable relief, I do not reach Plaintiff's alternative argument that the Court has statutory jurisdiction under 6 *Del. C.* § 18-111. *See* AB at 31–33.

**B. The Complaint Fails To State A Claim Upon Which Relief May Be Granted.**

Fast Pace argues next that even if the Court has subject matter jurisdiction over the dispute, the Complaint must be dismissed for failure to state a claim. When reviewing a motion to dismiss under Court of Chancery Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

Plaintiff's entitlement to relief under each count of the Complaint turns on whether Section 8.20(b) can reasonably be read to require Fast Pace to "preserve and retain," and entitle Plaintiff to "access," the Requested Electronic Documents. "When interpreting a contract, the role of a court is to effectuate the parties' intent." *Lorillard Tobacco Co. v. Am. Legacy Found.*, 903 A.2d 728, 739 (Del. 2006). "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning." *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012). "Contract language is not ambiguous merely because the parties dispute what it means. To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning." *Id.* (footnote omitted). "If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable

16

meaning, the writing itself is the sole source for gaining an understanding of intent." *City Inv. Co. Liquid. Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).

The parties agree that Section 8.20(b) entitles Plaintiff to access "any books and records, including electronic files, of the Acquired Companies existing prior to the Closing and reasonably required in connection with any audit, accounting, Tax, litigation or similar reports or filings with any Governmental Authority." Merger Agt. § 8.20(b). Section 8.20(b) also requires Fast Pace to "preserve and retain" those books and records.

The Merger Agreement does not define "books and records." Fast Pace insists that Section 3.8 of the Merger Agreement defines "books and records" to mean "[t]he books of account, minute books and stock record books," but that is inaccurate. OB at 32. Section 3.8 reflects the sellers' representation that "[t]he books of account, minute books and stock record books . . . are complete and correct in all material respects and have been maintained in accordance with sound business practices." Merger Agt. § 3.8. Although Section 3.8 includes the subject heading "Books and Records," Section 8.10 instructs that "[t]he subject headings of Articles and Sections of this Agreement are included for purposes of convenience of reference only and shall not affect the construction or interpretation of any of its provisions." *Id.* § 8.10. Accordingly, I have not considered the subject heading in

17

Section 3.8 to determine the meaning of "books and records" under the Merger Agreement.[6]

Although the Merger Agreement does not specify whether "books and records, including electronic files," could include the email accounts and other electronic records sought in the Requested Electronic Documents, Section 8.20(b) expressly limits Fast Pace's preservation and production obligation to books and records "reasonably required in connection with any audit, accounting, Tax, litigation or similar reports or filings with any Governmental Authority." In his briefing, Plaintiff did not even attempt to explain how the Requested Electronic Documents are "reasonably required" for any of the limited purposes identified in Section 8.20(b).[7] When pressed at oral argument, Plaintiff's counsel suggested that

---

[6] Fast Pace separately argues that if the parties wished to define "books and records" to include email and other informal communications, they could have done so explicitly, as they did within the definition of "Business Data." The Merger Agreement defines that term to include "all data in systems, databases, files, or other records, whether or not in electronic form." Merger Agt. § 8.2. This argument is more persuasive, but the Court need not decide whether "books and records" may include electronic files such as emails because even if it could, the Requested Electronic Documents are not reasonably required for the purposes set forth in Section 8.20(b), as explained herein.

[7] Fast Pace argued in its opening brief that Plaintiff has not requested books and records "reasonably required" for the purposes identified in Section 8.20(b). *See* OB at 11 ("Sellers' Complaint, however, does not identify any specific pre-closing records within Section 3.8's definition that are both missing and reasonably required for an enumerated purpose under Section 8.20(b)."); *id.* at 32 ("Under Section 8.20(b) of the Agreement, Fast Pace was required only to 'preserve and retain . . . any books and records, including

electronic communications necessary to respond to the Investigation are "reasonably required in connection with . . . litigation . . . or filings with a[] Governmental Authority." Draft Tr. at 33:16–20. That is not a reasonable interpretation of Section 8.20(b). Plaintiff's reading would dramatically expand the scope of a narrow provision that, by its plain terms, requires Fast Pace to preserve books and records required to respond to an audit, to file an accounting, or to prepare some similar, discrete report—not to prepare a comprehensive response in a government investigation.[8]

Indeed, under the canon of construction *noscitur a sociis*, "words grouped in a list should be given related meaning." *Del. Bd. of Nursing v. Gillespie*, 41 A.3d 423, 427 (Del. 2012) (quoting *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990)). "Likewise, the well-established principle *ejusdem generis* instructs that, 'where general language follows an enumeration of persons or things, by words of a

---

electronic files' existing prior to closing that are reasonably required for audits or filings."); *id.* at 37 ("Sellers' Complaint identifies no qualifying pre-closing 'books and records' that were 'reasonably required' for an enumerated purpose but not preserved."). In his answering brief, Plaintiff responded in conclusory fashion that the Investigation is "contemplated in the purposes identified in Section 8.20" and the parties' intention was "to preserve emails for situations exactly like the one the parties are now addressing," but did not otherwise support those arguments. AB at 37.

[8] As Fast Pace noted during oral argument, Fast Pace has elected to control the defense of the claims raised in the Investigation, so it is unclear why Plaintiff "require[s]" the Requested Electronic Documents to respond to the Investigation in any event. Draft Tr. at 38:19–39:11, 47:12–16.

particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to persons or things of the same general kind or class as those specifically mentioned.'" *Id.* at 428–29 (quoting *Aspen Advisors LLC v. United Artists Theatre Co.*, 861 A.2d 1251, 1265 (Del. 2004)). Section 8.20(b)'s reference to "litigation or similar reports" cannot reasonably be read to encompass broad electronic discovery "to evaluate liability in connection with the Investigation and to substantiate Fast Pace's claims to the Indemnity Escrow Funds," as Plaintiff now argues;[9] this section is limited to information needed to prepare discrete reports in the nature of an audit, accounting, or tax filing.

Plaintiff's interpretation also includes no limiting principle. Although Plaintiff argues that Section 8.20(b) obligated Fast Pace to preserve all electronic documents potentially relevant to the Investigation, under Plaintiff's reading, Fast Pace could not have known which documents to preserve unless it included all documents that conceivably could be relevant in a future litigation or government investigation. If the parties intended to impose such an obligation, they could have done so explicitly by agreeing to broader preservation language. For instance, they could have agreed to language requiring Fast Pace to retain and produce "any and all . . . information pertaining to the business and affairs of the [acquired company]"

---

[9] AB at 23.

for a five-year period. *Invictus Special Situations Master I*, 2024 WL 1646093, at *2. They did not do that. They also could have included an information right within the indemnification procedures, as some agreements do. *See, e.g., DRS Fam. Hldgs., Inc.*, 2026 WL 668442, at *2 (enforcing an information right in an indemnification provision); *ENI Hldgs., LLC v. KBR Gp. Hldgs., LLC*, 2013 WL 6186326, at *3 (Del. Ch. Nov. 27, 2013) (discussing an indemnification procedure giving the indemnifying party "full access" to books and records). They chose not to do that either. Plaintiff cannot rewrite the parties' bargain now by attempting to shoehorn the Requested Electronic Documents needed for the Investigation into Section 8.20(b)'s narrow purposes.

This is not to say that Fast Pace's alleged destruction of emails related to the Investigation will have no legal consequence in future proceedings. But Fast Pace's failure to produce, and its alleged destruction of, the Requested Electronic Documents did not breach the plain terms of Section 8.20(b). The Complaint therefore fails to state a claim and must be dismissed.[10]

## III. CONCLUSION

The Motion to Dismiss is GRANTED.

---

[10] Because the Motion to Dismiss is granted, Fast Pace's alternative request for a stay is moot.

21